1998 ME 260

**Robert CHASE et al.**

v.

**TOWN OF MACHIASPORT et al.**

Supreme Judicial Court of Maine.

Argued Sept. 9, 1998.

Decided Dec. 9, 1998.

---

Edmond J. Bearor (orally), Rudman & Winchell, Bangor, for the Plaintiffs.

Dennis L. Mahar (orally), Fletcher & Mahar, Calais, Carletta M. Bassano (orally), Assistant District Attorney, Washington County, Machias, for the Defendants.

Before WATHEN, C.J., and CLIFFORD, DANA, SAUFLEY, and CALKINS, JJ.

SAUFLEY, J.

[¶ 1] Robert and Charlotte Chase appeal from a judgment of the Superior Court (Washington County, *Alexander, J.*) affirming the decision of the Washington County Commissioners declining their request for a property tax abatement. The Chases argue that the Commissioners erred by failing to independently determine the value of their property; that the Commissioners violated the Maine Freedom of Access Act; and that the Commissioners erred by assessing the Chases' property as shorefront, rather than shoreview, property. Because we agree that the Commissioners erred in treating the property as shorefront property, we vacate the judgment.

## I. Background

[¶ 2] The Chases own approximately sixty-six acres on a wooded peninsula in Machiasport. All but approximately twelve of those acres are taxed as "forest land" under the Maine Tree Growth Tax Law. 36 M.R.S.A. §§ 571–584–A (1990 & Supp.1997). The twelve acres that are not taxed as "forest land" consist of abandoned fields, private roads and rights-of-way, and a one-acre lot designated as a "house lot," which remains unimproved except for well and septic systems. The house lot is located at the end of a private road nearly two miles in length, is situated about two hundred feet from the southern shore of the peninsula, and is almost entirely surrounded by property that is registered under the Tree Growth Tax Law.

[¶ 3] In 1996, the Town of Machiasport undertook a reassessment of the Town's property valuations. Following the reassessment, the Chases' one-acre house lot was treated as "shorefront" property for tax pur-poses rather than as "shoreview" property as it had previously been treated.[1] That reassessment translated into a significant increase in the value placed on the land and thus into higher taxes for the Chases.[2] The Chases appealed the assessment to the Board of Assessors, which denied the appeal.

[¶ 4] The Chases then filed an application for an abatement with the Washington County Commissioners. A hearing was held on April 3, 1997, at which the Town's assessor testified and the Chases presented evidence in support of their contention that the lot should not have been assessed as shorefront property. The Commissioners voted at their next meeting, without discussion or further deliberation, to deny the Chases' petition for abatement.

[¶ 5] The Chases filed a two-count complaint seeking review of governmental action by the Superior Court pursuant to M.R. Civ. P. 80B in which they asserted that the decision by the Washington County Commissioners and the Town of Machiasport violated the Maine Freedom of Access Act, 1 M.R.S.A. § 401–410 (1989), and that their assessment of the lot as shorefront property was arbitrary, capricious, unreasonable, and not based on substantial evidence in the record. The court first dismissed that part of the Chases' claim that incorrectly identified the Commissioners as defendants in the action, pursuant to *Shawmut Inn v. Town of Kennebunkport,* 428 A.2d 384, 388–89 (Me.1981). After hearing, the court affirmed the Commissioners' decision on the merits. From the decision on the merits, the Chases appeal.

## II. Freedom of Access Act

[¶ 6] We first address the allegation that the Commissioners violated the Freedom of Access Act. At the beginning of the hearing, the Chairman announced that "[f]ollowing the hearing, the Commissioners will adjourn to consider all evidence presented at today's hearing." At the close of the hearing, the following colloquy took place:

---

1. An earlier treatment of the lot as shorefront property in 1989 was reversed by the Board of Assessors upon application by the Chases for abatement that year.

2. The tax assessed on the house lot rose from $61.76 in 1995 to $710.05 in 1996.

Chairman: Anyway, what we're going to do, and we have no more questions, I would say we will take this under consideration, and probably at our next meeting, we will render a decision ...

Unidentified person: May 1st.

Mr. Bearor [representing the Chases]: You will deliberate at that meeting?

Chairman: *We will deliberate sometime between now and that meeting. See, we come in every week, and we have to sign warrants. Probably, at one of these times, we will get together and take into consideration. We will review the tape, and what people have said. We have opinions of our own, you know.*

Mr. Bearor: I would be most interested to hear those opinions, rather than to just—

Unidentified person: You will, when you get our decision.

Mr. Bearor: I would rather see the decision made....

(Emphasis added). At their next meeting, the Commissioners voted, without discussion or deliberation, to deny the Chases' requested abatement, "based on the fact that the property was assessed equitably when compared with other similar property in the Town of Machiasport."

[¶ 7] The Chases assert that the Commissioners violated the Freedom of Access Act by holding secret deliberations, *see* 1 M.R.S.A. § 403 (1989), and by failing to provide a written record explaining the reasons for their decision. *See* 1 M.R.S.A. § 407 (1989). All parties agree that the proceedings of the Washington County Commissioners are "public" proceedings as defined by the Act,[3] and thus must comply with the requirements of the Act. *See* 1 M.R.S.A. § 402(2) (Supp.1997); *id.* § 403.

3. A "public proceeding" is defined to include "the transactions of any functions affecting any or all citizens of the State by ... [a]ny board, commission, agency or authority of any county, municipality, ... or any regional or other political or administrative subdivision." 1 M.R.S.A. § 402(2)(C) (Supp.1997).

4. The Commissioners, separately represented because they were named incorrectly as parties, submitted affidavits from each Commissioner

[¶ 8] If the Commissioners had done what they said they would do, that is, get together privately to review and discuss the testimony or other evidence that was submitted, they would certainly have violated the Act. Deliberations outside of the public proceeding, except where explicitly allowed by law, are directly contrary to the language and intent of the Act. *See* 1 M.R.S.A. § 401 (1989).

[¶ 9] The party alleging a violation of the Act, however, has the burden of producing probative evidence before the Superior Court sufficient to support a finding that the Act has been violated. *See Scola v. Town of Sanford,* 1997 ME 119, ¶ 6, 695 A.2d 1194, 1195. The Chases did not present any evidence to the Superior Court that the Commissioners actually carried out their promise to deliberate in private, nor did they seek to introduce evidence not otherwise available from the agency record, pursuant to M.R. Civ. P. 80B(d).[4] We will not infer a violation of the Act from a record in which the only evidence of the threatened violation is the threat itself.

[¶ 10] The Chases next claim that the Commissioners violated section 407 of the Act by failing to provide a written record explaining their decision. In *Your Home, Inc. v. City of Portland,* 432 A.2d 1250 (Me. 1981), we held that the requirement that a written record accompany every decision under the Freedom of Access Act "does not require the [agency] to include a complete factual record with its decision, [but] does require a statement of facts sufficient to show a rational basis for the decision." *Id.* at 1257, *quoted in Cook v. Lisbon School Comm.,* 682 A.2d 672, 677 (Me.1996). The Commissioners' decision was based on a finding that "the [Chases'] property was assessed equitably when compared with other

averring that no private deliberations had been held, without moving for trial pursuant to 80B(d). Although the court should not consider facts that were not in the record before the governmental agency unless it has permitted introduction of evidence pursuant to 80B(d), any error here is harmless given that the burden is on the taxpayer to affirmatively present evidence of the alleged illegal actions of the Commissioners.

similar property in the Town of Machiasport." Although, as we conclude below, the Commissioners' failure to address the just value component of the assessment renders their findings incomplete, their findings are sufficient to show the basis for their decision. *See Edwards v. Town of York*, 597 A.2d 412, 413 (Me.1991). An erroneous or incomplete finding does not, by itself, constitute a violation of section 407.

### III. Burden of Proof and Standard of Review of the Assessment

■ [¶ 11] The Maine Constitution provides that "[a]ll taxes upon real and personal estate, assessed by authority of this State, shall be apportioned and assessed equally according to the just value thereof." Me. Const. art. IX, § 8. Accordingly, any assessment must include two distinct factual findings: first, the property must be assessed at its fair market value, *see Quoddy Realty Corp. v. City of Eastport*, 1998 ME 14, ¶ 9, 704 A.2d 407, 409, and second, the assessed value must be equitable, that is, the property must be assessed at a relatively uniform rate with comparable property in the district. *See generally McBreairty v. Commissioner of Admin. & Fin. Servs.*, 663 A.2d 50, 54 (Me.1995) (discussing constitutional obligation to assess property within a district at a uniform rate).

■ [¶ 12] A taxpayer seeking an abatement from the County Commissioners has the burden of proving that the assessed valuation is "manifestly wrong." *City of Waterville v. Waterville Homes, Inc.*, 655 A.2d 365, 367 (Me.1995) (quoting *Delta Chems. v. Town of Searsport*, 438 A.2d 483, 484 (Me. 1981)). The taxpayer may meet that burden by demonstrating that the property is substantially overvalued, that there was unjust discrimination, or that the assessment was fraudulent, dishonest, or illegal. *See Town of Vienna v. Kokernak*, 612 A.2d 870, 872 (Me. 1992); *see also Muirgen Properties, Inc. v. Town of Boothbay*, 663 A.2d 55, 58 (Me.1995) (discussing burden and standard of review).

■ [¶ 13] The Commissioners begin their independent evaluation of the assessment from the presumption that the assessor's valuation of the property is valid. *See*

*Sweet v. City of Auburn*, 134 Me. 28, 33, 180 A. 803 (1935) (citing *Penobscot Chemical Fibre Co. v. Town of Bradley*, 99 Me. 263, 267–69, 59 A. 83 (1904)); *see also Muirgen Properties*, 663 A.2d at 58 (citing past cases for the proposition that taxpayer challenging assessment has the burden of proving valuation was "manifestly wrong" in relation to the property's just value). This presumption, however, does not relieve the Commissioners of the responsibility to engage in "an independent determination of fair market value ... based on a consideration of all relevant evidence of just value." *Quoddy*, 1998 ME 14, ¶ 5, 704 A.2d at 408; *see also South Portland Assocs. v. City of South Portland*, 550 A.2d 363, 366 (Me.1988) (remanding case for an independent determination of fair market value by Board of Assessment Review).

■ [¶ 14] Because the Superior Court here acted in an appellate capacity, "we review directly the Commissioners' decision for an abuse of discretion, error of law, or findings unsupported by substantial evidence in the record." *Town of Vienna v. Kokernak*, 612 A.2d at 872.

### IV. The Subject Property

[¶ 15] The Chases sought an abatement only on their one-acre house lot. The fact that the lot is surrounded by property registered under the Tree Growth Tax Law did not change the responsibility of the Commissioners in this case. The Maine Tree Growth Tax Law provides that "[a]reas other than forest land within any parcel of forest land shall be valued on the basis of fair market value." 36 M.R.S.A. § 576–A (1990). Accordingly, it was incumbent on the Commissioners to determine whether the house was assessed at fair market value and whether it was assessed equitably compared to similar properties in the district.

■ [¶ 16] The Commissioners' stated finding addressed only whether the property was taxed equitably. No finding of any kind was made regarding the fair market value of

the property.[5] The Chases did not, however, request findings from the Commissioners after the decision was announced. In the absence of requests for findings, we will assume that the Commissioners resolved all factual issues in favor of the Town if competent evidence exists to support such findings. *See Town of Steuben v. Lipski*, 602 A.2d 1171, 1172 (Me.1992).

[¶ 17] The evidence offered in support of the Town's valuation was presented by the Town's assessor, Doug Guy. The Chases argue that the Commissioners erred as a matter of law when they accepted his classification of the property as shorefront land even though it did not touch the shore at any point. They assert that the "shorefront" designation could only have been arrived at by illegally including their forest land, which runs between the house lot and the shore, in the house lot's valuation.[6] They argue that the lot was therefore substantially and illegally overvalued when its fair market value was increased by the value of that contiguous shorefront property. The Town responds that the property was simply valued in the context of its location by taking into account the nature of the surrounding properties, considerations that are regularly used in the appraisal of real property.

[¶ 18] While we agree that a fair market valuation may take into consideration the relevant aspects of surrounding properties, that is not what was done here. Mr. Guy testified that he treated the property as shorefront property because the contiguous forest land was, in fact, shorefront. The comparables chosen by the assessor were telling on this point. Each of the comparables were properties that actually contained oceanfront land. The assessor made no comparison to any lots separated from the ocean by other property, even by property in the possession of the subject property owners.[7] Regarding the treatment of the lot as shorefront property, Mr. Guy testified as follows:

> .... [W]hat I am trying to do is establish a reasonable value on the rights to this piece of property. Now, that is complicated by the fact that there is tree growth involved in this. And, it is both complicated and it is made more simple because we know what the value of the tree growth acreage is. That value is set by the State. And I don't think there is any argument over that. The argument is over what is the value of this reserve lot.... [To assess the value of this lot,] *I used the number of feet of frontage on the shore.*
>
> ....
>
> *Now I calculated the value of this reserve lot on Long Point—I used 209 feet on the shore, which is essentially one side of a square acre.*
>
> ....
>
> But, I think, just to summarize, *this one-acre lot enjoys the amenities of having that water-from the shore down there, of which there is only so much in existence for which people are often willing to pay large amounts of money.*

(emphasis added). We assume, because it was the only evidence presented by the Town, that the Commissioners relied on Mr. Guy's testimony in reaching their decision. The exhibits reviewed by the Commissioners confirm that, rather than increasing the value of the house lot in recognition of its proximity to the shore, the assessor simply used the Town's standard shorefront rate in

---

5. Although the Chases also argue that the Commissioners failed to make an independent determination of value of the Chases' one-acre lot, as required by 36 M.R.S.A. § 844(1) (Supp.1997), *see Quoddy*, 1998 ME 14, ¶ 4, 704 A.2d at 408 (citing *South Portland Assoc. v. South Portland*, 550 A.2d at 366), they did not raise this issue in the Superior Court. Accordingly, we will not entertain it on appeal. *See Maine Real Estate Comm'n v. Kelby*, 360 A.2d 528, 530 (Me.1976), cited with approval in *Smith v. Great Northern Paper, Inc.*, 636 A.2d 438, 439 n. 2 (Me.1994).

6. The Tree Growth Tax Law, a system which is based on average annual forest growth rates as determined by the United States Forestry Service or the Maine Forestry Bureau, *see* 36 M.R.S.A. § 576 (Supp.1997), is designed to encourage "forest landowners to retain and improve their holdings of forest lands ... and to promote better forest management ... in order to protect this unique economic and recreational resource." 36 M.R.S.A. § 572 (1990).

7. Most of the comparables used had public road access, in contrast to the Chase lot, and most had electricity.

calculating the value of the lot. From this calculation, it becomes evident that house lot was valued as if a strip of shorefront forest land were a part of the house lot property.

[¶ 19] While the assessor is not required to ignore the access to the shore of the property being assessed, he may not mechanically treat non-shorefront property as synonymous with shorefront. Although we do not lightly dismiss the assessor's concern that taxpayers may avoid paying higher taxes on shorefront property by placing selected portions of their property into forest land status, this concern cannot be dealt with by taxing adjacent property as if it were on the shore. This does not, however, preclude the Town from considering the benefits to the subject parcel provided by the adjacent forest land, including access to the water. The value of a shoreview lot that is surrounded by undeveloped forest land which also provides access to the water may be higher than the value of the same lot without that access, but will not be identical to the value of a shorefront lot.

[¶ 20] Because section 576–A requires the Town of Machiasport to assess the value of the Chases' one-acre lot on the basis of its independent fair market value, the Commissioners erred as a matter of law in their assessment of the Chases' house lot. *See* 36 M.R.S.A. § 576–A. Although the Town has substantial discretion in its assessment of the fair market value of that land, it may not treat the one-acre house lot as if it were shorefront property.

The entry is

Judgment of the Superior Court vacated. Remanded to the Superior Court with instructions to remand to the Washington County Commissioners for further proceedings consistent with this opinion.

