2000 ME 213

**TOWN OF SOUTHWEST HARBOR**

v.

**Jean HARWOOD, Trustee, Cranberry Point Realty Trust.**

Supreme Judicial Court of Maine.

Argued Nov. 7, 2000.
Decided Dec. 14, 2000.

John L. Carver (orally), Carver, Kimball & Baiungo, Belfast, for plaintiff.

William H. Dale (orally), Sally J. Daggett, Jensen Baird Gardner & Henry, Portland, for defendant.

Panel: WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, SAUFLEY, ALEXANDER, and CALKINS, JJ.

SAUFLEY, J.

[¶ 1] Jean Harwood, the trustee of the Cranberry Point Realty Trust, appeals from a judgment entered in the Superior Court (Hancock County, *Mead, C.J.*), vacating the decision of the Southwest Har-

bor Board of Assessment Review in which the Board granted a tax abatement on two parcels of the trustee's land located on Greenings Island.[1] The trustee asserts that the Board's decision to grant the abatement was supported by substantial evidence in the record. We agree and vacate the judgment of the Superior Court.

## I. BACKGROUND

[¶ 2] On behalf of the Cranberry Point Realty Trust, the trustee owns two adjacent parcels of land located on the southwest portion of Greenings Island, which overlooks the shores and mountains of Acadia National Park. Greenings Island is located off the coast of the Town of Southwest Harbor and is considered to be within the Town's geographic limits. In 1981, the trustee purchased the first parcel of 9.78 acres, which included the main house, a boathouse, and a saltwater swimming pool. In 1995, the trustee purchased the second, adjoining parcel of 19.3 acres from an abutter. The two parcels have been combined for tax assessment purposes.

[¶ 3] Historically, the properties on Greenings Island have been difficult to value for tax purposes for several reasons. There is currently a total of fourteen parcels of property on Greenings Island. Many of the properties are owned by related family members who have spent summers on the island for generations. Until recently, properties generally passed between family members or relatives for nominal value, and arms length sales to third parties were rare. According to the Town's assessor, with the exception of recent sales, there have not been any distinct fair market value sales on Greenings Island "at least since the turn of the century." In addition, other islands in the area that might ordinarily provide comparable sales information have amenities that

---

1. At the commencement of this action, Peter Harwood held title to the property as the trustee of Cranberry Point Realty Trust. Mr. Harwood died during the pendency of the appeal, and his widow, Jean Harwood, has succeeded him as trustee and has been substituted as the proper party.

Greenings Island does not, including ferry service and electricity.[2]

[¶ 4] On April 1, 1997, the Town revaluated all the properties on Greenings Island for purposes of its 1997 tax assessments. As part of an update solely for the Greenings Island properties, the Town's assessor increased, among other things, the common multiplier used to calculate land values on Greenings Island from .26 to .70, which had the effect of substantially increasing all assessment values on the island. The assessed value of the trust's property increased from $823,300 in 1996 to $1,389,700 in 1997, both figures representing the assessed values before credits for land in the state tree growth and open space programs.

[¶ 5] The trustee unsuccessfully sought abatement from the Town regarding the 1997 assessment and then appealed to the Southwest Harbor Board of Appeals. After a hearing, the Board unanimously granted an abatement in the amount of $240,000, reducing the trust property's precredit assessment value to $1,149,700. The Town appealed to the Superior Court pursuant to 36 M.R.S.A. § 843(1) (Supp. 2000) and M.R. Civ. P. 80B. The Superior Court vacated the Board's decision, concluding that there was no evidence in the record to support the Board's determination of just value. This appeal followed.

## II. DISCUSSION

[¶ 6] Because the Superior Court acted as an intermediate appellate court, we review directly the Board's decision for abuse of discretion, error of law, or findings unsupported by substantial evidence in the record. *Muirgen Props., Inc. v. Town of Boothbay*, 663 A.2d 55, 58 (Me.

1995). "That the record contains evidence inconsistent with the result, or that inconsistent conclusions could be drawn from the evidence, does not render the [Board's] findings invalid if a reasonable mind might accept the relevant evidence as adequate to support the [Board's] conclusion." *Town of Vienna v. Kokernak*, 612 A.2d 870, 872 (Me.1992).

[¶ 7] In an abatement proceeding, the Board must undertake its responsibilities in two parts. The Board begins its review with the presumption that the assessor's valuation is valid. *Chase v. Town of Machiasport*, 1998 ME 260, ¶ 13, 721 A.2d 636, 640. The taxpayer has the burden of overcoming that presumption. *City of Waterville v. Waterville Homes, Inc.*, 655 A.2d 365, 367 (Me.1995). If the taxpayer presents sufficient evidence to meet his or her burden, and the Board is convinced that the assessed value was manifestly wrong, then the Board has the responsibility to undertake its own determination of just value and to grant "such reasonable abatement as the board thinks proper." 36 M.R.S.A. § 843(1); *accord City of Biddeford v. Adams*, 1999 ME 49, ¶¶ 24–25, 727 A.2d 346, 351–52; *Quoddy Realty Corp. v. City of Eastport*, 1998 ME 14, ¶ 11, 704 A.2d 407, 410.

[¶ 8] Thus, in an appeal from a Board's grant of tax abatement, we review the record to determine, first, whether the taxpayer presented "credible, affirmative evidence" to meet his or her burden of persuading the Board that the assessor's valuation was "manifestly wrong."[3] *See Chase*, 1998 ME 260, ¶ 12, 721 A.2d at 640 (citing *Waterville Homes, Inc.*, 655 A.2d at 367). If the record confirms that the taxpayer did present such evidence, we re-

---

2. The trust property, like most other properties on Greenings Island, lacks electricity and is used only for seasonal purposes.

3. To show that the assessment was manifestly wrong, the taxpayer must have demonstrated that (i) the judgment of the assessor was irrational or so unreasonable in light of the circumstances that the property was substantially overvalued and an injustice resulted, (ii) there was unjust discrimination, or (iii) the assessment was fraudulent, dishonest, or illegal. *Muirgen Props., Inc. v. Town of Boothbay*, 663 A.2d 55, 58 (Me.1995) (citing *Town of Vienna v. Kokernak*, 612 A.2d 870, 872 (Me.1992)).

view the Board's independent determination of the "just value" of the property for findings unsupported by the record, error of law, or abuse of discretion. *Adams,* 1999 ME 49, ¶ 25, 727 A.2d at 351; *Muirgen Props., Inc.,* 663 A.2d at 59.

### A. Evidence that the Assessed Value was Manifestly Wrong

[¶ 9] Southwest Harbor relies on our opinion in *Waterville Homes* for its assertion that the Board erred in concluding that the assessor's assigned value was manifestly wrong. In *Waterville Homes,* we held that a taxpayer may not meet his or her burden of proving that the assessor was manifestly wrong by merely impeaching the Town's assessment. *Waterville Homes, Inc.,* 655 A.2d at 366. Rather, the taxpayer must come forward with "credible, affirmative evidence of just value." *Id.* at 367.

[¶ 10] In *Waterville Homes,* the taxpayer presented "astonishingly meager" evidence, providing only the owner's bald assertions that the assessed value should be set either at the property's original discounted purchase price or at a previous year's assessed value, both of which were explicitly discredited by the Board as unreliable evidence of just value. *Id.* at 366. The Board determined that the owner's original purchase price was suspect because "it appears not to be an arm's length transaction." *Id.* Further, the Board refused to give any credibility to the City's previous years' assessment values because

those values had been substantially reduced as "a result of negotiations between [the owner] and the mayor's office." *Id.* Notwithstanding the Board's determination that the taxpayer had presented absolutely no credible evidence of the property's just value, however, the Board went on to quibble with the assessor's methodology and concluded that the property should be assessed at the very amount it had already rejected in the taxpayer's superficial presentation. *Id.* at 367.

[¶ 11] The facts here contrast significantly with those before us in *Waterville Homes. See id.* at 365–66. Here, the trustee came forward with affirmative evidence, which the Board found credible, to support the claim that the property's assessment was "manifestly wrong." *See id.* at 366–67; *Muirgen Props., Inc.,* 663 A.2d at 58–59. Through the trustee's testimony and that of the trustee's appraiser, the trustee presented the *key* piece of evidence upon which the Board relied to make its conclusion—the purchase price of a comparable piece of property on Greenings Island in an arms length sale.[4]

[¶ 12] The trustee's appraiser presented a report to the Board that included specific evidence of recent sales, one of which was the September 1996 purchase by Jarvis Newman of two lots on Greenings Island for a total of $730,000. Peter Harwood also testified regarding the Newman sale.[5] There was no dispute that the Newman sale was the result of an arms length

4. Specifically, the trustee offered the following evidence in support of his claim:
   a. The assessor used the two 1995 and 1996 Greenings Island purchases, in part, to establish a common assessment methodology that assessed the values for all Greenings Island properties in April 1997.
   b. The Town assessed Newman's property at $883,200 on April 1, 1997, just six months after Newman's admittedly fair market purchase price at $730,000.
   c. During those six months, there were no other sales of Greenings Island properties to indicate that the market price had changed.

   d. Newman's property, at the assessed value of $883,200, represented a 17% overvaluation from its fair market value at $730,000.

5. The Board had recently completed a hearing regarding an abatement request from a neighboring landowner, Peter Forbes. Because it had received extensive testimony in that matter regarding the makeup of Greenings Island, the 1997 revision of the Greenings Island tax assessments, and the assessor's methodology, the Board asked the parties in the Cranberry Point Realty Trust matter to be as brief as possible in presenting evidence.

transaction. Nor was there any dispute that just six months later, the Town assessed the Newman property at $153,200 higher than the purchase price.

[¶ 13] After hearing from the taxpayer, the taxpayer's appraiser, the Town's appraisers, and the assessor, the Board concluded that Newman's September 1996 purchase price of $730,000, which was "affirmatively" presented by the taxpayer, was the "ideal benchmark ... in terms of value on Greenings Island." Having concluded that Newman's purchase price represented "the cleanest" and "the best piece of evidence" before it, the Board then determined that the Town's April 1997 assessment value of the Newman property at $883,200 was approximately 17% higher than its just value. Because a uniform assessment system was used for all Greenings Island properties, the Board concluded that the Town had similarly overvalued the trust property, and thus, the assessed value of the trust property was manifestly wrong.

[¶ 14] In so concluding, the Board examined the evidence on the very basis that we have required. *See Waterville Homes, Inc.*, 655 A.2d at 367. It examined the facts before it to determine whether the taxpayer had presented evidence "proving that the assessed valuation *in relation to the just value* is 'manifestly wrong.'" *Id.* (quoting *Delta Chemicals, Inc. v. Inhabitants of Searsport*, 438 A.2d 483, 484 (Me. 1981)) (emphasis added). The Board accepted as credible the trustee's evidence regarding the arms length Newman sale, and, having reviewed all other evidence presented regarding the difficulties of determining the just value of properties on Greenings Island, it concluded that the Newman sale provided the most reasonable and credible baseline value for determining the just value of other property on the island. The Board was then entitled to use that evidence to determine that the Town's assessed value in comparison to the

likely just value of the trust property was "manifestly wrong." *See id.*

[¶ 15] In sum, the trustee presented evidence that the property was substantially overvalued by demonstrating that similar property on the island was overvalued and by showing that a common methodology with the same multiplier had been used for all island properties. The trustee presented sufficient evidence to sustain its burden of overcoming the presumption of validity. *See Muirgen Props., Inc.*, 663 A.2d at 58.

B. **The Board's Determination of the Trust Property's Just Value**

▇ [¶ 16] We next address the Town's claim that the Board erred in its determination of the property's just value. *See Quoddy Realty Corp.*, 1998 ME 14, ¶¶ 7–9, 704 A.2d at 409–10. Contrary to the Town's assertions, the record plainly shows how the Board calculated Harwood's property's "just value." *See* ME. CONST. art. IX, § 8. In April 1997, the Town assessed Newman's property at $883,200, which represented a $153,200 increase from his September 1996 arms length purchase price of $730,000. The amount $153,200 represented approximately a 21% increase from $730,000 or approximately a 17% decrease from $883,200. There were no sales of properties on Greenings Island in that interim six months, nor was there any other evidence of market fluctuations. Finding that there was no credible evidence to indicate "a 21 percent increase in the Newman property in the 6 months after it sold," the Board concluded that the Town's assessment method was in error.[6]

[¶ 17] The Board then determined that because a uniform system had been used to increase the assessment of all Greenings Island properties, the trust property's assessment value was similarly overvalued. Thus, reducing the trust property's erro-

---

6. The record also reflects the Board's general concern with the assessor's valuation method, along with the assessor's response that under- standing the process would take something of a "leap of faith."

neous value by the percentage of overvaluation, the Board subtracted 17% of its value from $1,389,700 to achieve the property's "just value" at $1,149,700.[7] In so determining, the Board relied only on the facts in the record, many of which were presented by the trustee. Although the Board did not make a separate determination of the trust property's value in its corresponding land and house components, as a whole, the Board's method was neither irrational nor affected by error of law.

[¶ 18] Southwest Harbor contends, nonetheless, that the Board abused its discretion by refusing to give weight to two post-April 1, 1997, Greenings Island sales—the 1997 Dinsmore sale and the 1999 Newman resale—which the Town alleges support the assessor's April 1, 1997, assessment values. Contrary to the Town's assertions, the Board, in its discretion, could have deemed unpersuasive those sales that took place after the April 1 effective date. *See* 36 M.R.S.A. § 502 (Supp.2000) ("the status of all taxpayers and of such taxable property must be fixed as of [April 1]").[8]

[¶ 19] Similarly, the Board did not abuse its discretion in rejecting Southwest Harbor's argument that the 1996 Newman purchase price, although indisputably arising out of an arms length sale, did not represent fair market value. The Town argues that the Board should have given greater weight to the fact that Newman listed his property for $2 million shortly after his purchase in 1996. The Town concedes that the property did not sell for another three years and did not sell at that price. Contrary to Southwest Harbor's argument, the Board acted within the bounds of its discretion in giving no weight to Newman's hoped for, but never realized, price. Newman's asking price, unlike his purchase price, was not reliable evidence of just value. *See Wesson v. Town of Bremen*, 667 A.2d 596, 599 n.5 (Me.1995) (affirming the Board's conclusion "that the Trustees' data was flawed because it was based on asking prices, not sale prices of property"). The arms length sale price of property provides the best evidence of market value. *Id.; see also McCullough v. Town of Sanford*, 687 A.2d 629, 631 (Me. 1996) (holding that "'just value' means market value").

[¶ 20] Finally, we address the Town's contention that because the Board declined to adopt the ultimate opinion of value presented by the trust's appraiser, it must necessarily have rejected all of the evidence presented by the trustee, thereby leaving no "affirmative evidence" from which it could have determined "just value" different than the one set by the assessor. The Town misreads our opinion in *Waterville Homes*. There, the Board concluded "the evidence of value provided by each party lacks validity." *Waterville Homes, Inc.*, 655 A.2d at 366. Here, the Board accepted some of the evidence presented by the taxpayer, but rejected the expert's ultimate opinion of value.

7. In essence, the Board used nothing more than a straight-line proportional analysis. Using Newman's purchase price as the baseline value for comparison, solving for the trust property's just value requires solving for the "X" in the following equation:

$$\frac{\text{Town's Assessed Value}}{\text{Just Value}} = \frac{\$883,200}{\$730,000} = \frac{\$1,389,700}{X}$$

$$X = 1,149,700 = \text{"justvalue"} \text{ of the trust property.}$$

8. On this precise point, the Board stated [A]s of the date of the assessment, 4/1/97, the best data available in that immediate neighborhood suggested that the property was overvalued; and a subsequent sale 21 months after the fact, to me, is grounds for reassessment 21 months after the fact, but not April 1, 1997.
Board Deliberations (Statements of Chairman Geary).

[¶ 21] When a Board is presented with evidence, it may accept parts of the evidence and reject other parts. *See Gulick v. Bd. of Envtl. Prot.*, 452 A.2d 1202, 1208 (Me.1982). It is not required to engage in an all or nothing fact-finding. *See, e.g., Kittery Elec. Light Co. v. Assessors of the Town of Kittery*, 219 A.2d 728, 738 (Me.1966) (concluding that it was not error for the fact-finder "to agree only in part with the plaintiff's experts"). The Board was free to accept facts presented by the trustee and reject the trustee's expert's opinion, just as it was free to accept facts presented by the Town and reject the Town's expert's opinion.

[¶ 22] Given the unique nature of the property at issue, the Board acted within the bounds of its discretion when it used Newman's arms length sale as its baseline for values of similar property on the island. No fewer than four opinions of just value, each with multiple subopinions and different methodologies, were offered regarding the different ways of calculating the fair market value of the trust property. Faced with conflicting opinions, the Board was entitled to make credibility determinations and undertake its own independent assessment of just value. *See McTeague v. Dep't of Transp.*, 2000 ME 183, ¶¶ 7, 9, 760 A.2d 619, 621; *Quoddy Realty Corp.*, 1998 ME 14, ¶ 7, 704 A.2d at 409. Although it was limited to using the evidence before it, the Board was not limited to the methodologies suggested by the various witnesses.

[¶ 23] Because the Board's decision was supported by substantial evidence in the record, we must vacate the Superior Court's judgment, which vacated the decision of the Board.

The entry is:

Judgment of the Superior Court vacated. Remanded to the Superior Court with instructions to affirm the decision of the Board of Assessment Review.