2001 ME 61

**Stephen G. YUSEM**

v.

**TOWN OF RAYMOND.**

Supreme Judicial Court of Maine.

Submitted on Briefs April 2, 2001.

Decided April 18, 2001.

Stephen G. Yusem, Norristown, PA, for plaintiff.

Joan M. Fortin, Esq., Robert J. Crawford, Esq., Geoffrey H. Hole, Esq., Bernstein, Shur, Sawyer & Nelson, P.A., Portland, for defendant.

Panel: WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, SAUFLEY, ALEXANDER, and CALKINS, JJ.

SAUFLEY, J.

[¶ 1] Stephen Yusem appeals from the judgment of the Superior Court (Cumberland County, *Crowley, J.*) affirming the decision of the Cumberland County Commissioners denying, with one modification, his request for a tax abatement regarding property located on Sebago Lake. We affirm the judgment.

## I. BACKGROUND

[¶ 2] Yusem owns approximately 4.19 acres of land on Sebago Lake in Raymond, Maine. Of that 4.19 acres, 2.3 acres are classified as shorefront property. The property includes a 100–year–old vacation home, a shed, a dock, and a building that is used both as a boathouse and a bunkhouse. He bought the property in 1996 for $535,000. In 1997, the property was assessed at $256,500,[1] consisting of $157,640 for the land and $98,860 for the buildings.[2]

[¶ 3] In 1998, the Town of Raymond undertook a reassessment of the Town's property valuations, focusing on land values. Prior to the revaluation, nonwaterfront properties were being assessed at close to their fair market value, while waterfront properties were being assessed at an average of 88% of their sales prices. The Town's new methodology recognized that property located more than 200 feet from the shore should be valued markedly lower than property located within 200 feet of the shore. Thus, the previous unitary land-pricing schedule used to value Yu-

---

1. The Town's records reflect that the 1997 assessment totalled $251,000, which appears to be incorrect in light of the fact that $157,640 was allocated to the land assess-ment and $98,860 was allocated to the building assessment.

2. The property was not improved in any way from April 1, 1997, to April 1, 1998.

sem's land and other lakefront properties was expanded into five subcategories: "Sebago 1," "Sebago 2," "Sebago 3," "Additional 1," and "Additional 2." The Town applied the "Sebago 3" pricing schedule to those portions of Yusem's property located within 200 feet of the shore and to the same shorefront portions of other similar waterfront properties located on Sebago Lake. As a result of the revaluation, the Town of Raymond assessed Yusem's property at $447,063 in October 1998. The assessment designated $356,652 of the value to the land and $90,411 to the buildings and improvements. Thus, the assessed value of Yusem's land increased substantially, while the assessed value of his seasonal home and outbuildings was reduced.

[¶ 4] Yusem requested a $200,000 tax abatement on that 1998 property assessment. The Town denied Yusem's application for abatement because Yusem failed to present evidence of comparable properties' relatively lower assessments, failed to present evidence that would support a lower valuation of his property, and failed to submit contrary evidence of the property's fair market value.

[¶ 5] Yusem appealed the Town's denial to the Cumberland County Commissioners. At the hearing before the Commissioners, Yusem argued that the assessor had failed to consider all of the factors enumerated in 36 M.R.S.A. § 701–A (1990 & Supp.1998)

to determine just value. He also argued that his property, which includes just a seasonal home, was assessed at only 10% lower than an abutting lot, which includes a year-round home, and that the assessor had failed to take note of certain restrictions on the use of his land.[3]

[¶ 6] The Commissioners voted to deny, in part, Yusem's petition for abatement. They granted Yusem a partial abatement to account for the erroneous assumption that the shorefront portion of his property constituted 2.84 acres, rather than 2.3 acres.[4] Yusem appealed to the Superior Court pursuant to M.R. Civ. P. 80B. The Superior Court affirmed the Commissioners' decision. This appeal followed.

## II. DISCUSSION

### A. Burden of Proof and Standard of Review of the Assessment

[¶ 7] Because the Superior Court acted as an intermediate appellate court, we review the decision of the Commissioners directly for an "abuse of discretion, error of law, or findings unsupported by substantial evidence in the record." *Town of Southwest Harbor v. Harwood*, 2000 ME 213, ¶ 6, 763 A.2d 115, 117.[5]

[¶ 8] When a taxpayer appeals from a Town's denial of an abatement, the Commissioners begin their review of the assessment with the presumption that the

---

3. The assessor, however, testified that the "assessment on [the abutting lot] is inappropriate relative to its market value. I would call that a clear case of an assessing mistake.... [I]ts current assessed value is well below its market value."

4. The adjusted assessment totalled $415,410, consisting of $324,999 for the land assessment and $90,411 for the building assessment.

5. Proceedings before the Commissioners are hybrid proceedings for purposes of determining which administrative body's actions we

review. *See Stewart v. Town of Sedgwick*, 2000 ME 157, ¶¶ 4, 9–10, 757 A.2d 773, 775, 776–77. In abatement proceedings, the Commissioners or analogous body undertakes an independent review of value, but does so only if the taxpayer makes his threshold showing that the assessment is manifestly wrong. *Id.* ¶ 9, 757 A.2d at 776. Because the Commissioners undertake an independent analysis of value if the taxpayer meets the preliminary burden, we review the actions of the Commissioners, not that of the Town. *Id.* ¶ 4, 757 A.2d at 775.

assessor's valuation of the property is valid. *Id.* ¶ 7, 763 A.2d at 117. To overcome that presumption, the taxpayer seeking an abatement from the Commissioners has the initial burden of presenting " 'credible, affirmative evidence' to meet his or her burden of persuading the [Commissioners] that the assessor's valuation was 'manifestly wrong.' " *Id.* ¶ 8, 763 A.2d at 117 (citations omitted). If, but only if, the taxpayer meets that burden, the Commissioners must engage in "an independent determination of fair market value ... based on a consideration of all relevant evidence of just value." *Quoddy Realty Corp. v. City of Eastport,* 1998 ME 14, ¶ 5, 704 A.2d 407, 408.

[¶ 9] To meet the initial burden of showing that the assessment was manifestly wrong, the taxpayer must demonstrate that (1) the judgment of the assessor was irrational or so unreasonable in light of the circumstances that the property was substantially overvalued and an injustice resulted; (2) there was unjust discrimination; or (3) the assessment was fraudulent, dishonest, or illegal. *Muirgen Props., Inc. v. Town of Boothbay,* 663 A.2d

55, 58 (Me.1995).[6] We will vacate the Commissioners' conclusion that the taxpayer failed to meet this burden " 'only if the record compels a contrary conclusion to the exclusion of any other inference.' " *Weekley v. Town of Scarborough,* 676 A.2d 932, 934 (Me.1996) (citations omitted).

### B. Yusem's Challenge

[¶ 10] Yusem presented no evidence of the property's just value and no evidence that his property was overvalued.[7] Indeed, he admitted that he had purchased the property for more than its current assessment. He presented no evidence of fraud or dishonesty. Nor did he present persuasive evidence that his property was assessed at a higher value than those properties in the area that were similar to his.[8] Instead, Yusem relied upon perceived errors in the assessor's methods to make his case.

[¶ 11] Specifically, Yusem argued that the assessment was "illegal" because the assessor did not articulate a review of those factors that may be relevant to a determination of just value pursuant to 36 M.R.S.A. § 701–A.[9] Section

---

6. "All taxes upon real and personal estate, assessed by authority of this State, shall be apportioned and assessed equally according to the just value thereof." ME. CONST. art. IX, § 8. Thus, an assessment must incorporate two concepts: (1) "the property must be assessed at its fair market value"; and (2) "the assessed value must be equitable, that is, the property must be assessed at a relatively uniform rate with comparable property in the district." *Chase v. Town of Machiasport,* 1998 ME 260, ¶ 11, 721 A.2d 636, 640 (citations omitted).

7. Yusem explained that he had not bothered to present an appraisal of the property because he believed that the Town's assessment was invalid based on his conclusion that the assessor had "absolutely ignored" 36 M.R.S.A. § 701–A (1990 & Supp.1998).

8. Regarding the single comparison suggested by Yusem, the Commissioners accepted the assessor's representation that the abutting lot was substantially undervalued in error.

9. Section 701–A provides, in pertinent part:

In the assessment of property, assessors in determining just value are to define this term in a manner which recognizes only that value arising from presently possible land use alternatives to which the particular parcel of land being valued may be put. In determining just value, assessors must consider all relevant factors, including without limitation, the effect upon value of any enforceable restrictions to which the use of the land may be subjected, current use, physical depreciation, functional obsolescence, and economic obsolescence. Restrictions shall include but are not limited to zoning restrictions limiting the use of

701–A requires an assessor to consider "all relevant factors" in determining just value. 36 M.R.S.A. § 701–A. Those factors will include, *where relevant to the assessment*, "the effect upon value of any enforceable restrictions to which the use of the land may be subjected, current use, physical depreciation, functional obsolescence, and economic obsolescence." *Id.*[10] Yusem argues that the assessor failed to consider each factor separately as applied to his property. Yusem did not, however, demonstrate that the consideration of any of the factors would have resulted in a reduced determination of just value of his property. When it is alleged that the assessor failed to consider any of the section 701–A factors, the taxpayer must demonstrate "how the failure to discretely consider those factors resulted in a substantial overvaluation." *Glenridge Dev. Co. v. City of Augusta*, 662 A.2d 928, 932 (Me.1995). Moreover, the statutory mandate that certain factors be considered does not equate to a mandate that each factor be applied to each property. *See Pepperman v. Town of Rangeley*, 1999 ME 157, ¶ 4, 739 A.2d 851, 853. The body determining just value must determine whether the factor at issue is relevant to the property before it. *See id.*

[¶ 12] In the final analysis, Yusem argues that he is entitled to an abatement, not because the perceived errors in the assessment resulted in the determination of an unjust or discriminatory assessment of his property, but solely because he has identified what he believes to be a flaw in the assessor's method of establishing the property's just value. In other words, notwithstanding Yusem's inability to demonstrate that the result was other than fair and just, he argues that he is entitled to an abatement because the process by which that result was reached may have been flawed.

[¶ 13] Yusem misapprehends his burden before the Commissioners. Impeachment of the assessor's methodology alone is insufficient to meet that burden. *City of Waterville v. Waterville Homes, Inc.*, 655 A.2d 365, 366 (Me.1995). The taxpayer must demonstrate that the "property is overrated." *Sears, Roebuck & Co. v. Inhabitants of Presque Isle*, 150 Me. 181, 107 A.2d 475, 477 (1954). Because the Commissioners' responsibility was to assure that the constitutional elements of taxation were present, their task was to determine whether the Town had failed to assign a value to Yusem's property that was "fair" (nondiscriminatory) and "just" (in line with the fair market value of the property). *See Chase v. Town of Machiasport*, 1998 ME 260, ¶ 11, 721 A.2d 636, 640.[11] To do so, the Commissioners would have to compare the assessed value of the lot with a value demonstrated by Yusem to more accurately reflect a fair and just value. Yusem's focused attack on the as-

land, subdivision restrictions and any recorded contractual provisions limiting the use of lands. The just value of land is deemed to arise from and is attributable to legally permissible use or uses only.
36 M.R.S.A. § 701–A.

10. The revaluation of Sebago property involved only land values in an area of prized real estate. Thus, such factors as physical depreciation, or functional or economic obsolescence would not have been relevant to the assessment.

11. " 'Just value means market value.' " *Quoddy Realty Corp. v. City of Eastport*, 1998 ME 14, ¶ 9, 704 A.2d 407, 409 (citations omitted). "The arms length sale price of property provides the best evidence of market value." *Town of Southwest Harbor v. Harwood*, 2000 ME 213, ¶ 19, 763 A.2d 115, 120. "Market value" generally means the price that a "willing buyer would pay a willing seller at a fair public sale." *Frank v. Assessors of Skowhegan*, 329 A.2d 167, 173 (Me.1974).

sessor's methodology left the Commissioners without the evidence necessary to undertake the comparison. Thus, he failed to meet his burden.

[¶ 14] Notwithstanding the deficiency in his presentation, Yusem argues that he is entitled to an abatement because his impeachment of the assessor's methods has demonstrated that the assessment was "illegal." We reject Yusem's attempt to recast his challenge to the assessor's methodology as a claim of illegality.[12] Such an approach would reward a taxpayer with an abatement from an assessment that represents a fair and just determination of value if the taxpayer points to a gap or perceived flaw in the assessment methodology. Because that approach would be entirely contrary to our established law, we have made it clear that a taxpayer may not meet his burden solely by attacking the methodology of the assessor. *Glenridge Dev. Co.*, 662 A.2d at 931.

[¶ 15] In sum, when the taxpayer fails to provide the Board with evidence of just value sufficient to convince the Commissioners or Board that an error may have occurred, the Commissioners have no basis for inquiring further into the assessor's method of determining just value. *Waterville Homes, Inc.*, 655 A.2d at 367.

Because Yusem failed to present evidence that the assessment was manifestly wrong, there was no reason for the Commissioners to scrutinize the manner by which the assessment was derived.

## C. Freedom of Access Act.

[¶ 16] We next address Yusem's allegation that the Commissioners' decision violates the Freedom of Access Act, 1 M.R.S.A. § 407(1) (1989). A party alleging a violation of the Freedom of Access Act bears the burden of presenting probative evidence before the Superior Court sufficient to support a finding that the Act was violated. *Chase*, 1998 ME 260, ¶ 9, 721 A.2d at 639.

[¶ 17] Section 407 requires the agency to make a written record of each decision and to articulate the reasons for the decision. 1 M.R.S.A. § 407(1).[13] The Commissioners were required to set out their findings with a level of specificity that is "'sufficient to appraise [sic] the applicant and any interested member of the public of the basis for the decision.'" *Christian Fellowship and Renewal Ctr. v. Town of Limington*, 2001 ME 16, ¶ 14, 769 A.2d 834, 838 (citation omitted).[14]

---

12. An illegal assessment is generally understood as one that exceeds the bounds of the taxing entity's authority. *See Herriman v. Stowers*, 43 Me. 497 (1857) (holding that the assessors of the town have no right to assess one who is not an inhabitant of the town).

13. Section 407(1) states:
    **1. Conditional approval or denial.** Every agency shall make a written record of every decision involving the conditional approval or denial of an application, license, certificate or any other type of permit. The agency shall set forth in the record the reason or reasons for its decision and make finding of the fact, in writing, sufficient to appraise [sic] the applicant and any interested member of the public of the basis for the deci-

sion. A written record or a copy thereof shall be kept by the agency and made available to any interested member of the public who may wish to review it.
1 M.R.S.A. § 407(1) (1989).

14. "An erroneous or incomplete finding does not, by itself, constitute a violation of section 407." *Chase*, 1998 ME 260, ¶ 10, 721 A.2d at 640. The requirement that a written record accompany every decision under Maine's Freedom of Access Act "does not require the [Commissioners] to include a complete factual record with its decision, [but] it does require a statement of facts sufficient to show a rational basis for the decision." *Your Home, Inc. v. City of Portland*, 432 A.2d 1250, 1257

[¶ 18] Yusem's failure of proof left the Commissioners with little to say. Although brief, we conclude that the Commissioners' findings are sufficient for our review and sufficient to apprise Yusem and the public of the reasons for their conclusion.

The entry is:

Judgment affirmed.

(Me.1981); *accord* 1 M.R.S.A. § 407(1); *Chase*, 1998 ME 260, ¶ 10, 721 A.2d at 639.