STATE OF MAINE                          SUPERIOR COURT
SOMERSET, ss.                           CIVIL ACTION
                                        Docket No.: 09-AP-006
                                                10-AP-003
                                        JCN -SOM - 12/17/2010

Brad & Deborah Balise,

Plaintiffs

                                        **DECISION AND ORDER**

v.

Town of Embden,

Defendant


This matter is before the Court on Plaintiffs' request for judicial review, pursuant

to Maine Rule of Civil Procedure 80B, of the March 30, 2010 decision of the Somerset

County Commissioners ("commissioners"), affirming the Town of Embden's denial of

Plaintiffs' request for an abatement of the Town's assessment of the Plaintiffs' property

for tax year 2009. Plaintiffs' request for judicial review of the denial of their request for

an abatement of their 2008 property taxes is joined in this action.

Factual Background

In 2004, Plaintiffs purchased for $72,000 certain property in the Town of Embden

("Town") with frontage on Hancock Pond. Despite its frontage on Hancock Pond, the

property was mistakenly classified as "rural" until 2008, and had been assessed under the

"rural" classification at $39,000. The Town reclassified the property in 2008 to

recognize its frontage on Hancock Pond, and explained the reclassification in a letter to

the Bernards, Plaintiffs' predecessors in title, to whom the Town had been erroneously

sending the tax bill for the property.

In its 2009 assessment of the property, the Town valued the property at $178,900. Plaintiffs sought an abatement in 2008 from the Town's assessment of their property at $167,000, contending that their property was overvalued given its unique composition of mostly wetland terrain, a road right-of-way occupying the driest and most buildable section of their property, and a statutory and regulatory resource protection setback of 250 feet from Hancock Pond, which is a "great pond" and a local water source entitled to certain environmental protections. The assessors denied the abatement request. While the proceedings regarding the 2008 assessment were pending, Plaintiffs requested an abatement of their 2009 tax bill.

After the assessors denied Plaintiffs' request for an abatement of their 2009 taxes, Plaintiffs appealed to the county commissioners. Upon consideration of Plaintiffs' appeal, one commissioner abstained from voting, one voted in favor of abatement, and the third and final commissioner voted against abatement. In the action seeking judicial review of the commissioners' decision to deny the 2009 abatement, in accordance with the parties' agreement, the Court consolidated the actions involving the 2008 and 2009 tax years, and defined the issues on which the Court would entertain evidence at a final hearing. Consistent with the Court's order, the testimony before the Court was limited to the testimony of Assessor Rodney Hatch, who presented evidence about the Town's classification of "wasteland" and the parcels within the Town that were considered to be within that classification.

Discussion

Plaintiffs' request for judicial review has generated two issues for the Court's consideration: (1) the Town's authority not to classify Plaintiffs' property as

"wasteland," even though the property might satisfy the State definition of "wasteland"; in other words, the Town's authority to define "wasteland" differently from the State for tax purposes; and (2) the merits of Plaintiffs' challenge to the Town's denial of Plaintiffs' abatement request.

One issue in this case concerns a town's home rule authority to classify property for tax purposes differently than it is classified for state tax valuation purposes. Plaintiffs maintain that their property should at least in part be classified as wasteland because the property includes wetlands. In support of this contention, Plaintiffs cite the administrative rule governing the determination of state valuation, 18-125 C.M.R. ch. 201, §1(HH) (1996), which defines "waste" as "any acreage which is unsuitable for development, agricultural, or silvicultural use; i.e. wetlands and ledge barrens." Plaintiffs argue that because the state valuation includes such a classification, the local assessors must consider wetlands as "wasteland," and tax it accordingly. To do otherwise, Plaintiffs assert, would exceed the assessors' authority.

According to the Town, although a town map that includes a wetlands classification is being developed, there is at the present time no local tax assessment classification for wetlands. The record before the Court, including the testimony of Assessor Hatch, demonstrates that in 2005, the Town determined that the "wasteland" classification was to be reserved for parcels in tree growth areas that were unsuitable for tree growth. In response to Plaintiffs' argument, therefore, the Town advised Plaintiffs that if they wished to pursue a "wasteland" classification for any portion of their property, they should ask a forester to evaluate the fitness of the property for tree growth.

The Town thus maintains that in accordance with its home rule authority, it is not bound by the State's definition of "wasteland."

"Home rule is granted to municipalities by the Maine Constitution and by statute. ME. CONST. art. VIII, pt. 2, § 1; 30-A M.R.S. § 3001." *E. Perry Iron & Metal Co., Inc. v. City of Portland*, 2008 ME 10, ¶ 14, 941 A.2d 457, 462. "The home rule statute states that it is to be liberally construed to effect its purposes, that there is a presumption in favor of home rule, and that preemption is not to be implied unless local action would frustrate the purposes of state law." *Id.* "Only where the municipal ordinance prevents the efficient accomplishment of a defined state purpose should a municipality's home rule power be restricted, otherwise municipalities are free to act to promote the well-being of their citizens." *Id.* (quoting *School Comm. v. Town of York*, 626 A.2d 935, 938 n.8 (Me. 1993); 30-A M.R.S. § 3001(3)) (brackets omitted).

"There is a rebuttable presumption that action taken pursuant to the home rule statute is a valid exercise of authority." *Id.* at ¶ 24, 941 A.2d at 464. "[M]unicipal and state enactments may peacefully co-exist within any given subject area unless a conflict arises, in which event the state statute will control." *School Comm.*, 626 A.2d at 944 (quoting *Report of the Joint Standing Committee on Local and County Government on the Revision of Title 30*, at 12 (Dec. 1986)). Here, Plaintiffs have not presented any persuasive evidence to rebut the presumption of validity enjoyed by the Town's "wasteland" classification. That is, Plaintiffs have not produced evidence that the Town's "wasteland" classification would frustrate state taxation purposes. Indeed, the state statutory scheme allows local assessors significant discretion in determining their methods of assessment. "Although the Legislature has established 'minimum assessing

standards' with which the assessors must comply, 36 M.R.S.A. § 327, it has stopped short of setting forth in the statutes the different methods which local assessors may utilize to achieve such results. 36 M.R.S.A. § 326." *Shawmut Inn v. Kennebunkport*, 428 A.2d 384, 389-90 (Me. 1981); *see also* Clifford H. Goodall and Seth A. Goodall, *Property Tax: A Primer and a Modest Proposal for Maine*, 57 Me. L. Rev. 585, 590, 593-94 (2005) (noting that Maine state government receives no revenue from municipal collection of property taxes, and that no statewide assessment criteria exist). Because the state has not expressly legislated in this area, there is no statutory purpose that is frustrated by the Town's assessment procedures, and they are well within the municipality's home rule authority. *Cf. School Comm.*, 626 A.2d at 942 (noting the appellant's failure to articulate how local action frustrated statutory purpose).

The Court next considers the merit of Plaintiffs' challenge to the commissioners' decision to deny their request for an abatement. Article IX, Section 8 of the Maine Constitution provides, "All taxes upon real and personal estate . . . shall be apportioned and assessed equally according to the just value thereof." Me. Const. art. IX, § 8. "Accordingly, any assessment must include two distinct factual findings: first, the property must be assessed at its fair market value, *see Quoddy Realty Corp. v. City of Eastport*, 1998 ME 14, ¶ 9, 704 A.2d 407, 409, and second, the assessed value must be equitable, that is, the property must be assessed at a relatively uniform rate with comparable property in the district. *See generally McBreairty v. Commissioner of Admin. & Fin. Servs.*, 663 A.2d 50, 54 (Me. 1995) (discussing constitutional obligation to assess property within a district at a uniform rate)." *Chase v. Town of Machiasport*, 1998 ME 260, ¶ 11, 721 A.2d 636, 640.

"When a taxpayer appeals from a Town's denial of an abatement, the Commissioners begin their review of the assessment with the presumption that the assessor's valuation of the property is valid." *Yusem v. Town of Raymond*, 2001 ME 61, ¶ 8, 769 A.2d 865, 869-70. "To overcome that presumption, the taxpayer seeking an abatement from the Commissioners has the initial burden of presenting credible, affirmative evidence to meet his or her burden of persuading the Commissioners that the assessor's valuation was manifestly wrong." *Id.*, 769 A.2d at 870 (quotations and brackets omitted). "An assessment is manifestly wrong if: (1) the property was substantially overvalued and injustice resulted; or if the assessment involved (2) unjust discrimination; or (3) fraud, dishonesty or illegality." *UAH-Hydro Kennebec, L.P. v. Town of Winslow*, 2007 ME 36, ¶ 9, 921 A.2d 146, 149. "In order for the Board to determine if the assessor substantially overvalued the property, the taxpayer has to present credible evidence of its value." *Ne. Empire Ltd. P'ship #2 v. Town of Ashland*, 2003 ME 28, ¶ 7, 818 A.2d 1021, 1024. "[E]ven if a Board does not accept the value proffered by a taxpayer, if that suggested value and the basis for the value are credible evidence of the overvaluation of the subject property, the Board's responsibility to undertake an independent determination of value is triggered." *Id.* at ¶ 8, 818 A.2d at 1024; *see also Quoddy Realty Corp.*, 1998 ME 14, ¶ 7, 704 A.2d at 409 ("By withholding their independent determination of just value, the Commissioners failed to discharge their statutory responsibilities. 36 M.R.S.A. § 844(1)."); *South Portland Assocs. v. City of South Portland*, 550 A.2d 363, 366 (Me. 1988) ("Since the Board itself did not make any independent determination of the fair market value on the basis of an income analysis and all other relevant evidence, it had no basis for its ultimate finding that the assessed value

of this property is not so unreasonable as to result in an injustice.") (quotation omitted). Once the commissioners' obligation to undertake an independent analysis of fair value is triggered, the commissioners are prohibited from deferring to the assessors' determination of value. *Town of Vienna v. Kokernak*, 612 A.2d 870, 873 (Me. 1992) ("We have previously recognized that [36 M.R.S. § 844], governing tax assessment appeals to the county commissioners, requires that the commissioners give no deference to the decision of the tax assessors.") (footnote omitted).

At the hearing below, Plaintiffs presented testimony from Mr. Bernard, the property's owner until 2004, who had tried unsuccessfully to sell the property for ten years prior to the Plaintiffs' purchase. Mr. Bernard was thus in a unique position to offer evidence of the property's market value. *See City of Waterville v. Waterville Homes, Inc.*, 655 A.2d 365, 367 n.1 (Me. 1995) ("We do not suggest that a petitioner seeking a tax abatement must provide affirmative evidence of just value through the use of expert witnesses. We recognize the well-established principle that a property owner is entitled to offer an opinion on the value of the property for which an abatement is sought."). Plaintiffs also offered evidence of the 2004 arms'-length sale price ($72,000); assessments of other property in the Town, including a parcel on Hancock Pond, with a wasteland classification; aerial satellite photos of the property indicating boundary lines, roads, wetlands, and the conservation area surrounding Hancock Pond; and photographs taken while standing on the property revealing it to be more like a swamp than dry or useable waterfront property.

Assessor Rodney Hatch described the method of assessing the Plaintiffs' property as follows: insofar as the land was on Hancock Pond but was not buildable because of

resource protection restrictions, the assessors, rather than creating a new schedule, applied the existing schedule governing valuation of the less costly Sandy and Fahi waterfront property rather than the more costly Hancock Pond property schedule. He testified that this method was used for all properties within resource protection on Hancock Pond, without regard to the parcels' individual qualities, as most towns use the mass appraisal method rather than viewing each shorefront property. The evidence before the commissioners and before the Court established that the Town valued the properties according to this mass valuation system and not based upon the subject property's individual characteristics.

"Application of the substantial evidence standard of review requires the reviewing court to 'search the entire record to determine whether on the basis of all the testimony and exhibits before the agency it could fairly and reasonably find the facts as it did.'" *Vienna v. Kokernak*, 612 A.2d at 872 (quoting *Winship v. Brewer School Comm.*, 390 A.2d 1089, 1093 (Me. 1978)) (ellipsis omitted). Even viewed through this deferential lens, the record reveals that the denial of the abatement is based upon a consideration of only one of the two required prongs of analysis. While the evidence of record could support a finding that the property was "assessed at a relatively uniform rate with comparable property in the district," *see Chase*, 1998 ME 260, ¶ 11, 721 A.2d at 640, the evidence cannot support a finding that the assessment was based upon the fair market value of the Balise property, which is the other constitutional and statutory requirement. *See id.*

"In our State the tax assessors are under both a constitutional and statutory obligation to determine the 'just value' of taxable property." *Shawmut Inn*, 428 A.2d at

389 (citing Me. Const., art. IX, § 8, 36 M.R.S.A. § 201); *see also S. Portland Assocs.*, 550 A.2d at 369 ("the objective of all appraisal methods is precisely the same: the determination of just or market value."). "'Just value' is the equivalent of 'market value.'" *Shawmut Inn*, 428 A.2d at 389 (quoting *Sweet, Inc. v. City of Auburn*, 134 Me. 28, 31, 180 A. 803, 804 (1935); *Frank v. Assessors of Skowhegan*, 329 A.2d 167, 173 (Me. 1974)). "The arms length sale price of property provides the best evidence of market value." *Town of Southwest Harbor v. Harwood*, 2000 ME 213, ¶ 19, 763 A.2d 115, 120. "'Market value' generally means the price that a 'willing buyer would pay a willing seller at a fair public sale.'" *Yusem*, 2001 ME 61, ¶ 13 n.11, 769 A.2d at 872 (quoting *Frank*, 329 A.2d at 173). The legislature has also defined "just value" for the purposes of tax assessment:

> In the assessment of property, assessors in determining just value are to define this term in a manner that recognizes only that value arising from presently possible land use alternatives to which the particular parcel of land being valued may be put. In determining just value, assessors must consider all relevant factors, including without limitation the effect upon value of any enforceable restrictions to which the use of the land may be subjected including the effect on value of designation of land as significant wildlife habitat under Title 38, section 480-BB, current use, physical depreciation, sales in the secondary market, functional obsolescence and economic obsolescence. Restrictions include but are not limited to zoning restrictions limiting the use of land, subdivision restrictions and any recorded contractual provisions limiting the use of lands. The just value of land is determined to arise from and is attributable to legally permissible use or uses only.

36 M.R.S. § 701-A (2009).[1]

A review of the record relevant to the just value of Plaintiffs' property reveals that Plaintiffs presented credible evidence to support their contention that their property was

---

[1] The Court cites the statute as a reflection of the factors that merit consideration in a proper assessment of just value, rather than as a basis for overturning the commissioners' decision—although failure to consider these factors may provide an independent basis upon which to invalidate the commissioners' decision. *See Pepperman v. Town of Rangeley*, 1999 ME 157, ¶ 3 n.1, 739 A.2d 851, 852.

substantially over valued. Specifically, in addition to the 2004 purchase price, the evidence established that the property's waterfront, rather than solid terrain bordering Hancock Pond, is a three-foot-wide strip of land that is separated from the main parcel by a bog area where water ranges from six to twelve inches deep and vegetation grows freely. The property has no buildings and would likely not support any. There are no utilities and no cell phone coverage. Forty percent of the parcel is wetland. The driest and most buildable portion of the land is reserved for two acres of right-of-way. The road nearest to the parcel is a private road and there is no road access to the property itself; the waterfront swath must be accessed from a neighboring parcel over which the petitioners have no legal right to pass. Not insignificantly, the record contains no evidence of comparable property. In fact, Plaintiff Brad Balise explained that he had been unable to locate comparable properties for sales data because no other properties have the same unique characteristics.

In short, because the Town's approach did not consider the individual qualities of Plaintiffs' property, which, if considered, likely would have resulted in a substantially lower valuation of Plaintiffs' property, the Town's approach was not in accordance with the legislative mandates of 36 M.R.S. § 701-A and the constitutional requirements of assessing property at its just or market value. Given the record before it, the commissioners should have undertaken an independent valuation of Plaintiffs' property. *See Ne. Empire Ltd. P'ship #2*, 2003 ME 28, ¶ 8, 818 A.2d at 1024. Because the commissioners did not conduct an independent valuation, the Court remands the case to the commissioners for an independent determination of the property's value for tax years 2008 and 2009, and for an abatement of the difference between the assessed value and the

just value, after considering the property's individual characteristics and the factors set forth in 36 M.R.S. § 701-A.

Pursuant to M.R. Civ. P. 79(a), the Clerk shall incorporate this Decision and Order into the docket by reference.

Dated: 12/17/10

_____
Justice, Maine Superior Court