STATE OF MAINE
CUMBERLAND, ss.

STATE OF MAINE
CUMBERLAND, SS
CLERK'S OFFICE

2007 MAR 22 P 2: 25

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP-06-38
AP-06-39

LINEBERGER FAMILY
PARTNERSHIP

      Plaintiff

v.

TOWN OF SCARBOROUGH

      Defendant

and

JAMES E. LINEBERGER, JR.

      Plaintiff

v.

TOWN OF SCARBOROUGH

      Defendant

ORDER ON 80B APPEAL

DONALD L. GARBRECHT
LAW LIBRARY

AUG 02 2007

      Before the Court are the consolidated appeals of Plaintiffs James E. Lineberger, Jr. ("Lineberger") and the Lineberger Family Partnership ("Partnership") pursuant to M.R. Civ. P. 80B of the Town of Scarborough ("Town") Board of Assessment Review's ("Board") decision to deny Plaintiffs' requests for tax abatements.

## BACKGROUND

      The Partnership owns property improved by a building that is located at 17 Massacre Lane in Scarborough, Maine ("Massacre Property"). Lineberger owns property improved by a building that is located at 10 Saccarappa Lane in Scarborough ("Saccarappa Property"). On September 21, 2005, Lineberger and the Partnership ("Plaintiffs") applied for tax abatements of property taxes

1

assessed on the Massacre Property and the Saccarappa Property for the period between July 1, 2005 and June 30, 2006. The Town assessed the Saccarappa Property's land at $690,100 and its building at $37,900 for a total value of $728,000. The Town assessed the Massacre Property's land at $1,187,900 and its building at $240,200 for a total value of $1,428,100.

On January 3, 2006, the Assessor for the Town ("Assessor") denied Plaintiffs' abatement applications. On March 2, 2006, Plaintiffs submitted Applications for Assessment Review to the Board for both properties. The Board convened a hearing on both appeals on March 31, 2006. At the hearing Plaintiffs contested only the Assessor's valuation of the land for each property, agreeing with the valuation of the buildings. At the hearing, Lineberger presented his own testimony as well as the testimony of Albert Childs ("Childs"), a licensed Maine real estate appraiser. The Town presented testimony by the Assessor.

Following presentation of the evidence, the Board requested that each side submit proposed Findings of Fact. On June 27, 2006 the Board held a hearing at which it voted to deny Plaintiffs' abatement requests. Subsequently, on June 29, 2006, the Board released its written decision on these matters, essentially adopting the Town's proposed findings of fact. Plaintiffs timely filed this appeal.

## STANDARD OF REVIEW

The Court reviews a zoning board's decision for abuse of discretion or findings not supported by substantial evidence in the record. *York v. Town of Ogunquit*, 2001 ME 53, ¶ 6, 769 A.2d 172, 175. Substantial evidence is evidence that is sufficient for a board to have reasonably found the facts as it did. *Ryan v. Town of Camden*, 582 A.2d 973, 975 (Me. 1990). The burden of persuasion is on the party challenging a board's decision to show that the evidence compels a

different result. *Twigg v. Town of Kennebunk*, 662 A.2d 914, 916 (1996). The Court must not substitute its judgment for that of a board. *Id.* Further, a board's "decision is not wrong because the record is inconsistent or a different conclusion could be drawn from it." *Id.*

In seeking a tax abatement, the taxpayer must overcome "the presumption that the assessor's valuation of the property is valid." *Yusem v. Town of Raymond*, 2001 ME 61, ¶ 8, 769 A.2d 865, 869-70. In order to overcome this presumption, a taxpayer bears the burden of coming forward with affirmative evidence proving that an assessment is manifestly wrong. *Id.* ¶ 8, 769 A.2d at 870. It is well established that in order for a taxpayer to prevail in challenging a board's assessment, "the taxpayer must show one of three things: (1) that the judgment of the assessors was irrational or so unreasonable in light of the circumstances that the property is substantially overvalued and an injustice results; (2) that there was unjust discrimination; or (3) that the assessment was fraudulent, dishonest, or illegal." *McCullough v. Town of Sanford*, 687 A.2d 629, 630 (Me. 1996).

## DISCUSSION

### I. Effect of Plaintiffs' Failure to Challenge the Assessment of their Buildings

Plaintiffs do not maintain that there was unjust discrimination in their assessed values or that their assessments were fraudulent, dishonest, or illegal. They only argue that the Assessor's appraisal was so unreasonable that their properties were substantially overvalued resulting in an injustice.

A threshold issue is whether Plaintiffs can prevail in light of their failure to dispute the assessment applied to the buildings on their properties. The Town asserts that they cannot, relying on a case in which the Law Court stated that it had "never sustained an unjust discrimination claim based only on a single

3

component of a total assessment, without a showing that the property's total assessment was discriminatory." *Roberts v. Town of Southwest Harbor*, 2004 ME 132, ¶ 3, 861 A.2d 617, 617-18. The court went on to note that "[p]revious cases in this Court have found discrimination after comparing the *total* assessed values of similarly situated properties." *Id.* ¶ 3, 861 A.2d at 618.

Assuming that *Roberts* is applicable to tax abatement cases where it is argued that there has been substantial overvaluation of a property such that an injustice results and not simply to unjust discrimination cases, the Town's argument nevertheless fails. In *Roberts*, a taxpayer's property was physically divided "into categories based on the characteristics and potential use of the property . . . [and e]ach of these categories [was] assessed at a specific rate." *Id.* ¶ 2, 861 A.2d at 617. Rather than argue that the cumulative total of the values assigned to each category resulted in unjust discrimination, the taxpayer argued only that the valuation applied to the "Rear Land 2 portion of his property was assessed at a rate higher than other Rear Land 2 property in the Town." *Id.* In response, the court held that a taxpayer cannot succeed in an abatement case by arguing that only a single category of his property, rather than the property as a whole, was overvalued. *Id.* ¶ 3, 861 A.2d at 617-18. This is logical given that it is only when a property as a whole is assessed in a way that does not reflect its true market value or is inconsistent with assessments of similar properties that there is a "constitutional harm." *See id.* ¶ 4, 861 A.2d at 618.

The Town's interpretation of *Roberts* would turn that case's holding on its head. Whereas *Roberts* instructed that a taxpayer may not succeed in an abatement request in which he compares only the assessment of one category of his property against the assessment of one category from other properties

4

without reference to the total value of the properties, the Town's interpretation would require a taxpayer seeking an abatement to not only plead that his whole property has been overvalued in relation to others, but that each individual category of his property has likewise been overvalued. Nothing in *Roberts* supports this. Plaintiffs have argued that their land is overvalued and, when put together with the Assessor's valuation of their buildings, the total value of their properties are overvalued. This pleading is sufficient.[1]

## II. Proper Legal Standard

Plaintiffs argue that the Board applied an improper legal standard in determining whether their property was overvalued to the point that the Assessor's valuation could be considered "manifestly wrong." Specifically, the Board stated the following:

> To meet the legal threshold of what is required to prove "manifest error" in a property tax appeal, i.e. the taxpayer's "burden of proof", the Taxpayer must:
>
> a.  Present evidence which that Board accepts as credible that impeaches the validity of the assessment *and*
> b.  Provide evidence and proof of the actual fair market value of the applicant's property that the Board also deems credible.
>
> Only if the Taxpayer satisfies *both* of these burdens is the Board authorized to engage in an independent determination of the fair market value of the property for purpose [sic] of granting an abatement.

(R. at 125.) Plaintiffs argue that this was an incorrect formulation of their burden of proof in that they should not have been required to offer evidence impeaching the validity of the assessment.

---

[1] The Town's interpretation would lead to the absurd conclusion that so long as an assessor correctly values any single section of a taxpayer's property, a taxpayer could not successfully seek an abatement regardless of how large the overvaluation on the remainder of the property.

In support of their position, Plaintiffs rely heavily on language from *Yusem v. Town of Raymond* stating that "[i]mpeachment of the assessor's methodology alone is insufficient to meet [a taxpayer's] burden [in a tax abatement case]." 2001 ME 61, ¶ 13, 769 A.2d at 871. Plaintiffs assert that this language does not support the Board's interpretation that a taxpayer is required not only to present evidence of a property's fair market value, but also to present evidence impeaching an assessor's methodology.

While the language quoted by Plaintiffs may be ambiguous when read out of context, a thorough reading of *Yusem* makes clear that the Board applied the correct legal standard. *Yusem* was a case in which the taxpayer "presented no evidence of [his] property's just value and no evidence that his property was overvalued" instead relying upon "perceived errors in the assessor's methods to make his case." *Id.* ¶ 10, 769 A.2d at 870. Essentially, the taxpayer argued that "notwithstanding [his] inability to demonstrate that the result was other than fair and just . . . he [was] entitled to an abatement because the process by which that result was reached may have been flawed." *Id.* ¶ 12, 769 A.2d at 871. It was in this context that the court stated that impeachment of the assessor's methodology by itself was not enough for a taxpayer to meet his burden. The court went on, however, to state the following:

> In sum, when the taxpayer fails to provide the Board with evidence of just value sufficient to convince the Commissioners or Board that an error may have occurred, the Commissioners have no basis for inquiring further into the assessor's method of determining just value. Because Yusem failed to present evidence that the assessment was manifestly wrong, there was no reason for the Commissioners to scrutinize the manner by which the assessment was derived.

*Id.* ¶ 15, 769 A.2d at 872 (internal citation omitted). This section of the court's opinion makes clear that while presentation of evidence sufficient to support a finding by a Board that a property is overvalued is a necessary step in any tax abatement case, a taxpayer must also impeach the assessor's method of determining just value. Any other conclusion would be contrary to the instruction that a tax assessor's valuation of a property is entitled to a presumption of validity. *Id.* ¶ 8, 769 A.2d at 869-70.[2] Therefore the Board applied the correct legal standard in making its decision.

### III. Substantial Evidence in the Record

Even under Plaintiffs' proposed legal standard, they would have been required to provide credible proof regarding a different valuation of their properties than the Assessor's valuations. Given that the Board explicitly found that Plaintiffs had failed to satisfy this requirement, remand would only be appropriate if the record evidence compels a different conclusion from that reached by the Board.

Essentially, the Board weighed the credibility of the testimony of Plaintiffs' expert Childs against that of the Assessor.[3] Childs presented no formal appraisal, but did present a "land analysis" on a spreadsheet during his testimony. This land analysis included properties from both the Ferry Beach area,

---

[2] By merely presenting evidence in support of his own valuation, a taxpayer can at best establish that his valuation may be a reasonable one. Because the taxpayer has the burden of proof before a board, such a showing cannot demonstrate that the assessor's valuation was "manifestly wrong." To do so, a party must attack the assessor's methodology.

[3] Lineberger also testified and offered his own estimates regarding the value of the properties. In reaching his valuation, Lineberger looked at recent sales in the neighborhood, derived a per-acre value from those sales, and then applied that value directly to his property. Plaintiffs' own expert discredited this method and Plaintiffs do not argue that Lineberger's testimony before the Board provides support for their position.

7

referred to as the "West" neighborhood, and the Lanes, also referred to as the "East" neighborhood. Plaintiffs' properties are both located in the East neighborhood. Childs used only comparable properties from the West neighborhood, however, and stated that the "general consensus" was that properties in the East neighborhood could be expected to sell for 15-25% more than comparable properties in the West neighborhood. Childs, however, could not provide documentation for his sources to support this "consensus" nor could he provide documentation to show how he chose the differential to be applied. As a result, the Board found this information to be "unsupported hearsay" and found "no grounds to justify the market differential stated." (R. at 126.)

The Assessor also testified at the hearing that, in his opinion, there is no interchangeability between the East and West neighborhoods such that a straight 15-25% increase in the values of properties from the West neighborhood that are comparable to properties from the East neighborhood would accurately account for the difference in values of the properties. (R. at 40.) Further, the Board thought it important that the Assessor used sales data from both the East and West neighborhoods. (R. at 126.)

Based on the proceedings before the Board as described above, there is nothing in the record compelling a conclusion different from that reached by the Board. Plaintiffs essentially admit this is the case in their reply brief, stating that "[u]ltimately, [] inconsistencies between the Town's position and the Record *alone* may not be legally dispositive of these appeals given the deference afforded the Board," before going on to argue that the Board's imposition of an allegedly incorrect legal standard warrants a remand. (Pls.' Rep. Br. 3.) However, as explained earlier, under the legal standard proposed by Plaintiffs they still

8

would have been required to demonstrate that their properties were overvalued. Because the Board already made a determination against Plaintiffs on this issue, even if it were error to require Plaintiffs to attack the methodology of the Assessor, it was harmless error, as it did not affect the outcome of the Board's decision. As a result, such an error could provide no basis for remand to the Board. *See* M.R. Civ. P. 61.

Therefore, the entry is:

> Plaintiffs' Rule 80B appeal is DENIED. The Town of Scarborough Board of Assessment Review's decision to deny Plaintiffs' requests for tax abatements is AFFIRMED.
>
> The clerk shall incorporate this Order into the docket by reference pursuant to M.R. Civ. P. 79(a).

Dated at Portland, Maine this 22nd day of _March_, 2007.

Robert E. Crowley
Justice, Superior Court

9

Date Filed _____7-24-06_____ ____CUMBERLAND____     Docket No. __AP06-38_____
                                                County          cons. w/AP-06-39

Action ____80B Appeal_____

LINEBERGER FAMILY PARTNERSHIP                TOWN OF SCARBOROUGH

                                                  vs.

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| Bradford Pattershall Esq<br>PO BOX 17555<br>Portland ME 04112 | ROBERT CRAWFORD, ESQ.<br>P.O. BOX 9729<br>PORTLAND, MAINE  04104-5029 |

Date of
Entry

Date Filed __7-24-06__ __CUMBERLAND__ Docket No. __AP06-39__ cons. w/AP-06-38

County

Action __80B APPEAL__

JAMES E. LINEBERGER JR          TOWN OF SCARBOROUGH

vs.

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| BRADFORD PATTERSHALL ESQ<br>PO BOX 17555<br>PORTLAND ME 04112 | ROBERT J. CRAWFORD, ESQ.<br>P.O. BOX 9729<br>PORTLAND, MAINE 04104-5029 |

Date of
Entry