**MUIRGEN PROPERTIES, INC. et al.**

v.

**TOWN OF BOOTHBAY.**

Supreme Judicial Court of Maine.

Argued June 9, 1995.

Decided Aug. 9, 1995.

---

Dennis J. Jumper (orally), Snyder & Jumper, Wiscasset, for plaintiffs.

William H. Dale (orally), Jensen Baird Gardner & Henry, Portland, for defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, DANA and LIPEZ, JJ.

DANA, Justice.

The Town of Boothbay appeals from a judgment entered in the Superior Court (Lincoln County, *Atwood, J.*) modifying an order of the Lincoln County Commissioners awarding an abatement of the 1992 property taxes paid by Muirgen Properties, Inc. with respect to two parcels of real estate.[1] The Town argues that the order of the commissioners was not an action from which Muirgen could seek review in the Superior Court and that the Superior Court erred by finding that there was insufficient evidence to support the commissioners' order. Finding sufficient evidence to support the commissioners' order with respect to one parcel and insufficient evidence with respect to the other, we vacate the judgment of the Superior Court.

### Facts

The first piece of real estate is the Thistle Condominium Complex which consists of 10½ acres of land. Although the land has been approved for the construction of 20 condominium units, only one building containing three condominium units has been constructed. In 1992 the Town assessed the total value of the Thistle Complex at $623,900 and sent Muirgen 20 tax bills for this parcel, one for each of the actual or proposed units. The breakdown of these assessments is as follows:

| Unit | Land | Building | Total |
| --- | --- | --- | --- |
| Unit 4A | 37,000 | 135,600 | $172,600 |
| Unit 5B | 37,000 | 150,000 | $187,000 |

1. Mark and Jocelyn Walter, who purchased unit 4A of the Thistle Condominiums in the summer of 1992, joined Muirgen in its petition for an abatement.

| Unit | Land | Building | Total |
|------|------|----------|-------|
| Unit 6C | 37,000 | 164,900 | $201,900 |
| 3 other units (combined) | 2,700 | 9,300 | $12,000 |
| 7 other units (combined) | 6,300 | 19,600 | $29,900 |
| 7 other units (combined) | 6,300 | 18,200 | $24,500 |
| Total | 126,300 | 497,600 | $623,900 |

These assessments were based on a town-wide revaluation conducted in 1989 and were unchanged from that time.

The other piece of real estate consists of approximately 29 acres of undeveloped land. In 1992 Boothbay assessed its value as $177,700. This value was also unchanged from the 1989 revaluation.

After obtaining appraisals of its properties, Muirgen applied to the Town for valuation abatements of $225,900 (36%) on the Thistle Complex and $127,700 (72%) on the undeveloped land. In March 1993 the Town denied Muirgen's applications explaining that "the values in question are 1989 values, not current values." With respect to the valuation for the unbuilt condominiums, the Town explained that because "the plans, permits and surveys are still in place ... [it] assessed each unit as 2% complete, representing that value of the above plans, etc." In April 1993 Muirgen appealed the Town's decisions to the Lincoln County Commissioners on the ground that the 1992 assessments did not properly reflect the dramatic decline since 1989 in the markets for subdividable undeveloped land and condominiums.

At a hearing before the commissioners, Muirgen's appraiser testified to the value of the properties as of April 1, 1992. Based on a reconciliation of the cost approach and the sales comparison approach, the appraiser valued Unit 4A at $129,000, Unit 5B at $134,000, and Unit 6C at $145,000. The appraiser did not contest the land valuation of the 17 unbuilt units, but testified that there was no value to the development rights, plans, or surveys. Using both the land development and sales comparison techniques, the appraiser estimated the value of the parcel of undeveloped land as $50,000. In addition, he testified that the value of condominiums de-

clined 30 to 55 percent from 1989 to 1992. Mary Lee Brown, a local real estate broker and an assessor for the neighboring town of Boothbay Harbor, also testified that the condominium market declined drastically. She explained that Boothbay Harbor recognizes condominiums as a "separate entity in the assessment process" and has twice adjusted valuations downward on condominiums to compensate for the market decline.

The Town's assessor was its only witness. He testified that the valuations resulted from a town-wide revaluation based on contemporary sales in 1989. He explained that it was the practice of the Town to wait until the next revaluation before adjusting individual property values, and simply to adjust the tax rate each year according to the Town's needs. He further testified that the condo market represented "a real problem" and that 1992 was "a very tricky period to establish actual market worth," but conceded that it is "conceivable ... to readjust [values] every year according to the market." The Town, however, decided to avoid individual revaluations and "stay with the revaluation at the '89 prices."

The commissioners issued a decision in October 1993. They determined that (1) condominium law precludes the Town from assessing each undeveloped lot individually and that the value of the 17 undeveloped lots must be assessed to the three existing condominiums on a pro rata basis;[2] and (2) that the undeveloped land was over-assessed by 15 percent "due to the difficulty of development due to ledge and very steep terrain with lack of adequate septic soils for significant development." The commissioners ordered corresponding abatements. A week later, the Chairman sent the parties a letter in which he stated that no abatement was granted on the three units in the Thistle Complex, but that the assessors were to reassess the land comprising the 17 unbuilt units as though it were undeveloped land. The letter also stated that if the parties agreed, the commissioners would be willing to hold open their final decision on that portion of the case so as to settle any dispute

---

2. Neither party challenges this determination.

that might arise out of the subsequent reassessment.

Muirgen filed a complaint in the Superior Court pursuant to 36 M.R.S.A. § 844 (Supp. 1994) seeking review of the commissioners' decision. The Town then moved to supplement the record to include evidence that the Town granted an abatement to Muirgen pursuant to the commissioners' decision, but the court denied the motion. The court concluded that the commissioners' decision was "manifestly wrong" because the Town failed to rebut Muirgen's "uncontroverted showings that the assessments on their properties were based on outdated and poorly substantiated valuations and methods." The Court then "modified" the commissioners' decision by ordering abatements on the Thistle Complex and the undeveloped land of $215,900 and $127,700 respectively. The Town appeals from this judgment.

### Appealable Final Judgment

The Town contends that there was no appealable final judgment to the Superior Court because the commissioners' decision and post-decision letter constituted a remand to the assessors. We disagree.

■ The commissioners' authority to review applications for tax abatements derives from 36 M.R.S.A. § 844(1). Section 844(1) requires the commissioners to grant an abatement on finding that an applicant has been over-assessed. It does not grant authority to the commissioners to remand the application to the assessors. Consequently the commissioners were without authority to remand the application for further consideration, and their decision constituted a final judgment for purposes of review by the Superior Court.

### Burden and Standard of Review

■ "All taxes upon real and personal estate, assessed by authority of this State, shall be apportioned and assessed equally according to the just value thereof." Me. Const. art. IX, § 8. " 'Just value' is the equivalent of 'market value.' " *Shawmut Inn v. Town of Kennebunkport*, 428 A.2d 384, 389 (Me.1981). Assessors "shall ascertain as nearly as may be the nature, amount and value as of the first day of each April of the real estate ... subject to be taxed...." 36 M.R.S.A. § 708 (1990). "The assessor's valuation is entitled to a presumption of validity, and the taxpayer has a burden to prove the assessed valuation is 'manifestly wrong.' " *Town of Steuben v. Lipski*, 602 A.2d 1171, 1172 (Me.1992). "The taxpayer seeking abatement carries that burden by proving that the assessed valuation *in relation to the just value* is 'manifestly wrong.' " *City of Waterville v. Waterville Homes, Inc.*, 655 A.2d 365, 367 (Me.1995) (quoting *Delta Chems. v. Town of Searsport*, 438 A.2d 483, 484 (Me.1981) (emphasis in *Waterville Homes* )). Specifically, the taxpayer must prove that one of three situations exists:

(1) The judgment of the assessors was irrational or so unreasonable in light of the circumstances that the property is substantially overvalued and an injustice results;

(2) There was unjust discrimination; or

(3) The assessment was fraudulent, dishonest, or illegal.

*Town of Vienna v. Kokernak*, 612 A.2d 870, 872 (Me.1992). If the taxpayer meets its burden, it "shall be granted such reasonable abatement as the commissioners think proper." 36 M.R.S.A. § 844(1) (1990). We review directly the commissioners' decisions for abuse of discretion, error of law, or findings unsupported by substantial evidence in the record. *Kokernak*, 612 A.2d at 872. "That the record contains evidence inconsistent with the result, or that inconsistent conclusions could be drawn from the evidence, does not render the commissioners' findings invalid if a reasonable mind might accept the relevant evidence as adequate to support the commissioners' conclusion." *Id.*

### Thistle Condominium Complex

■ The evidence before the commissioners was one-sided. Muirgen provided substantial evidence that the assessed value of the properties was substantially higher than the actual value of these properties as of April 1, 1992. Two experts testified that the market for condominiums had declined disproportionately to other real estate markets.

The Town entered no evidence to contest this fact. Instead it entered the assessment cards prepared in 1989 for each of the properties. It attempted to justify the use of these values for 1992 tax purposes by arguing that these 1989 values were applied town-wide and thus did not unfairly prejudice Muirgen. It did not, however, provide any evidence to refute Muirgen's showing that the condominium market had declined disproportionately. In fact, the Town admitted that the "condo market is a real problem." Furthermore, the Town provided no evidence of the market value of the properties in 1992. In light of the undisputed fact of the condominium market decline, the decision of the assessors to use 1989 values was unreasonable and resulted in the property being substantially over-valued.

As a result, the evidence in the record does not support the commissioners' decision which essentially upholds the Town's use of the 1989 values for purposes of the 1992 assessments. The Superior Court correctly recognized that the record does not support the commissioners' decision. The decision of the Superior Court to modify the commissioners' decision and specify the amount of the abatement, however, was inappropriate. The determination of the amount of the abatement is one properly left to the commissioners.

### Undeveloped Land

The commissioners necessarily found that the Town's assessment of the undeveloped land was manifestly wrong and ordered an abatement of fifteen percent. The Town does not challenge the finding that the assessment was manifestly wrong or the propriety of the fifteen percent abatement. We, therefore, review the record to determine only whether there was substantial evidence to support the conclusion that the fifteen percent abatement was reasonable. Contrary to Muirgen's contentions, we conclude that there was sufficient evidence.

Muirgen provided considerable evidence to support its request for a 72 percent abatement, but unlike with the Thistle Complex, the Town provided evidence to impeach Muirgen's valuations. The Town assessor testified that the comparative sale property used by Muirgen's expert had no view or access to the water, abutted poor quality properties, and had a low sale price because the transfer was not an arms-length transaction.

The parties agree with the commissioners' conclusion that the property was over-assessed, but disagree as to their determination of a reasonable abatement. After reviewing the entire record, we conclude that it was not unreasonable for the commissioners to find that the amount of the over-assessment required only a fifteen percent abatement. Muirgen's successful challenge of the Town's assessment did not compel the commissioners to grant an abatement in the amount Muirgen requested.

The entry is:

Judgment vacated.

Remanded with instructions to affirm the commissioners' order with respect to the undeveloped land and to remand to the commissioners for further proceedings consistent with the opinion herein.

All concurring.