STATE OF MAINE

KENNEBEC, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP-01-13
SKS - KEN- 4/5/2002

NORTHEAST EMPIRE LIMITED
PARTNERSHIP #2,

     Plaintiff/Petitioner

    v.

TOWN OF ASHLAND,

    Defendant/Respondent

**DECISION ON APPEAL**

DONALD L. GARBRECHT
LAW LIBRARY

MAY 10 2002

This matter comes before the court on appeal from the State Board of Property

Tax Review (Board), pursuant to M.R. Civ. P. 80C. The Board denied the appeal of

Northeast Empire Limited Partnership #2 (NELP) from a denial of property tax

abatement by the town of Ashland's Board of Assessors (Town) for tax years 1997

and 1998. NELP owns 28 acres in Ashland on which it operates a commercial wood-

fired electric power generation facility. The Town valued the property at $39,218,400

for tax year 1997 and $25,000,000 for tax year 1998. NELP contends the property

should be valued at $2,000,000 for both years. The Board upheld the Town's decision

and this appeal followed.

### Background

The electric power generation facility was constructed in 1993 as part of a

power purchasing agreement between NELP and Central Maine Power Company.

The plant cost approximately $60,000,000 to construct and was financed through

General Electric Credit Corporation (GECC). The plant produced power for the next

1

year and then Central Maine Power negotiated a stand-down agreement through NELP and received payments from CMP in exchange for not producing power. In 1997, CMP negotiated a termination with NELP. After the termination agreement was completed, the power purchasing agreement was purchased by another company and the proceeds were used to pay off various obligations including the financing received from GECC. After all these transactions had taken place, NELP offered to purchase the physical plant from GECC. Based on what NELP characterizes as an arm's length transaction, a sale price of $2,000,000 was agreed upon. In its appeal, NELP urges the court to consider the stand-down status of the plant and the $2,000,000 sales price as proof that the assessed valuations for 1997 and 1998 were invalid and unreasonable.

## Discussion

Before discussing the issues on appeal, the court must consider the Town's motion to strike Appendices A & B of NELP's brief as not properly part of the record on appeal. Specifically, the Town objects to excerpted testimony and incorporation by reference of two documents previously filed by NELP. Rule 80C(f) dictates the agency must provide the record on appeal. Counsel may not freely supplement the record in a tax abatement appeal. However, upon closer examination, Appendix A to the petitioner's brief contains excerpts and summaries of testimony which is provided in its entirety as part of the record, and Appendix B is a verbatim excerpt from NELP's brief to the Board (with the exception of the title which should be stricken). Therefore, the town's motion to strike is denied.

2

Moving to the issues on appeal, when a decision is appealed pursuant to M.R. Civ. P. 80C, the court reviews the decision directly for abuse of discretion, errors of law, or findings not supported by the evidence. *Centamore v. Dep't of Human Services*, 664 A.2d 369, 370 (Me. 1995). When a taxpayer challenges assessed valuation, the taxpayer must overcome the presumption that the valuation is valid by persuading the reviewing body that the assessor's valuation was manifestly wrong. *Yusem v. Town of Raymond*, 2001 ME 61, ¶ 8, 769 A.2d 865, 869. In abatement proceedings, the reviewing body undertakes an independent review of value, only if the taxpayer makes his threshold showing that his assessment is manifestly wrong. *Id.* ¶ 8. To show manifest wrong, the taxpayer must demonstrate (1) the judgment of the assessor was irrational or so unreasonable in light of the circumstances that the property was substantially over-valued and an injustice resulted; (2) there was unjust discrimination; or (3) the assessment was fraudulent, dishonest or illegal. *Id.* ¶ 9 (citing *Muirgen Props., Inc. v. Town of Boothbay*, 663 A.2d 55, 58 (Me. 1996). A taxpayer must do more than merely impeach the town's assessment methodology in order to meet the burden of proving the assessment was manifestly wrong. The taxpayer must come forward with "credible, affirmative evidence of just value." *Town of Southwest Harbor v. Harwood*, 2000 ME 213, ¶ 9, 763 A.2d 115, 118 (quoting *City of Waterville v. Waterville Homes, Inc.*, 655 A.2d 365, 367 (Me. 1995)).

The judgment that a property's assessed value is in excess of just value requires a comparison between the local assessment and the version of value that

the petitioner asserts as the just one. If the petitioner for abatement fails to provide the Board with evidence of just value that the Board deems credible, the Board has no basis for comparing the local assessment with the petitioner's version. *Waterville Homes*, 655 A.2d at 367. Credibility determinations are "exclusively the province of [factfinder] and will not be disturbed on appeal." *Sprague Electric Co. v. Maine Unemployment Comm.*, 544 A.2d 728, 732 (Me. 1988). If, but only if the petitioner is able to convince the Board that the assessor's valuation was manifestly wrong, the Board is then required to make an independent determination of fair market value considering all relevant evidence of just value. *Quoddy Realty Corp. v. City of Eastport*, 1998 ME 14, ¶ 5, 704 A.2d 407, 408.

The evolved and refined procedures set forth above makes good sense. A taxpayer cannot prevail in his case before the Board simply by attacking the assessor because that would simply show what is wrong rather than what is right. Therefore, the taxpayer must not only prove that the assessor was wrong, but he must also provide the Board with evidence which the Board can then take into consideration along with the evidence the assessor offers to make an independent determination of fair market value. However, the evidence presented by the taxpayer cannot be just any evidence; it must be credible evidence. If the evidence presented is incredible, then it cannot be used to make the independent determination and, by extension, cannot be used to show that the assessor's valuation was manifestly wrong. If this were not the procedure, the Board could find itself not believing the assessor, not believing the taxpayer, and without any useable tools or information

4

with which to make an independent determination of value.

In the present case, the Board never reached the point where it was required to make its independent valuation. The Board conducted five days of hearings and received voluminous exhibits. The Board then issued a 13-page decision, replete with findings and analysis. In particular, the Board analyzed the evidence presented by NELP and found it wanting in terms of credibility. The Board also notes certain weakness in the assessor's procedures, but concluded that it did not need to decide whether the taxpayer had met the first prong of the test of determining the assessment as manifestly wrong, because the taxpayer failed to meet the second prong.

The Board did not merely make a conclusory finding that the taxpayer's evidence of value was not credible. The key witness for the taxpayer was a Mr. Huck. The Board conducted a detailed appraisal of Huck's appraisal -- including cost approach, income approach, and sales comparison approach to valuation -- and specifically stated why it found each of his conclusions lacking credibility.

To summarize, the Board's decision to deny the petitions for abatement for the tax years April 1, 1997 and April 1, 1998 was the result of its determination that the taxpayer had failed to present credible evidence leading to a credible value for the property, thus failing the second prong of the test set forth in *Waterville Homes* to determine manifest wrong. This finding left the Board without the tools necessary to make its own independent determination of just value and the necessity to deny the abatement. The credibility of witnesses and evidence is pivotal

in determining whether an abatement petition will proceed, and these issues of credibility are best left to the Board. This court finds no abuse of discretion, errors of law or findings not supported by the evidence. The Board discharged its duties appropriately under 36 M.R.S.A. § 843 and the direction of the Law Court in *Waterville Homes.*

NELP has also claimed that the Board counsel gave incorrect instructions as to the legal standard, that the Board improperly considered intangibles in its assessment and that the Board wrongfully admitted irrelevant evidence in violation of M.R. Evid. 405. However, the court agrees with the Town that it is the Board's decision rather than Board counsel's advice that is subject to review. Any weakness in Board counsel's advice might better be characterized as incomplete rather than mistaken. It is the legal standard stated in the opinion which must be considered as the basis for the Board's decision rather than preliminary advice. The issue of intangibles was already fully addressed in NELP's motion in limine, which was denied. Finally, the Board is not bound by the Maine Rules of Evidence and has the discretion to exclude irrelevant evidence, but is not obligated to do so.

For the reasons stated above, the entry will be:

> Respondent's motion to strike is GRANTED with regards to the title of Appendix B but is otherwise DENIED. The appeal is DENIED and the decision of the State Board of Property Tax Review is AFFIRMED. REMANDED to the State Board of Property Tax Review.

Dated: April 5, 2002

S. Kirk Studstrup
Justice, Superior Court

6

Date Filed ___3/1/01___  ___Kennebec___  Docket No. ___AP01-13___

County

Action ___Petition for Review___
                 80C                                          **J. STUDSTRUP**


Northeast Empire Limited Partnership #2  vs.  Board of Property Tax & Town of Ashland

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| Alfred C. Frawley, Esq. <br> Tracey G. Burton, Esq. <br> P.O. Box 665 <br> Bath, Maine 04530 | –Michelle M. Robert, AAG <br> 6 State House Station <br> Augusta,Maine 04333-0006 <br> –Robert J. Crawford, Esq.   (Ashland) <br> P.O. Box 9729 <br> Portland, maine 04104 |

| Date of Entry | |
|---|---|
| 3/5/01 | 80C Petition for Review of Final Agency Action, filed. s/Frawley, Esq. s/Burton, Esq.  (filed 3/1/01) <br> Certificate of Service, filed. s/Frawley, Esq. |
| 3/12/01 | Entrance of Appearance, filed  s/Crawford, Esq. |
| 3/21/01 | Motion to Extend Time Within Which to File Record, filed. s/Robert, AAG |
| 3/26/01 | MOTION TO EXTEND TIME, Marden, J. <br> Time enlarged to May 14, 2001. <br> Copies mailed to attys of record. |
| 5/3/01 | Motion to Extend Time Within Which to File Record, filed. s/Robert, AAG. |
| 5/7/01 | MOTION TO EXTEND TIME, Studstrup, J. (dated 5/4/01) <br> Time extended to 6/1/01. <br> Copies mailed to attys of record. |
| 6/5/01 | Certificate of Record, filed. s/Michaud, Sec. of Board. <br> Notice of briefing schedule mailed to attys of record. |
| 7/5/01 | Motion by Agreement for Enlargment of Time with incorporated memorandum of law, filed. s/Burton, Esq. <br> Proposed Order, filed. |
| 7/9/01 | ORDER ON MOTION FOR ENLARGEMENT OF TIME, Studstrup, J. <br> Petitioner's motion for enlargement of time to file its 80C appeal brief to August 1, 2001 is GRANTED. <br> Copies mailed to attys of record. |
| 7/16/01 | Amended Certificate of Record and Amended Summary of Contents, filed.  s/ Barbara Michaud, Board Secretary. |
| 7/20/01 | Amended Certificate of Record, filed. s/Michaud, Sec. |
| 7/25/01 | Unopposed Motion for Leave to Exceed Page Limit with Incorporated Memo-Memorandum of Law, filed. s/Frawley, Esq. <br> Proposed Order, filed. |