STATE OF MAINE                                    SUPERIOR COURT
                                                    CIVIL ACTION
YORK, ss.                                       DOCKET NO. AP-09-032
                                                GAB-YOR-3/24/2010


WALTER J. FOWSKI and
NANCY C. FOWSKI,

                    Plaintiffs


        v.                                          **ORDER**


CITY OF BIDDEFORD,
BOARD OF ASSESSMENT REVIEW,

                    Defendant



        Walter J. Fowski and Nancy C. Fowski appeal from the City of Biddeford's Board

of Assessments Review's decision to deny their tax abatement appeal.   Following

hearing and review of the record, the appeal is Denied.

                              **BACKGROUND**

        The Fowskis own residential oceanfront property at 35 Fortunes Rocks Road in

the Fortunes Rocks neighborhood of Biddeford, Maine. This property is identified as

Lot 20 on Tax Map 63. (R. at C9.) The Tax Map shows the lot to have one hundred feet

of road frontage, narrowing to eighty-five feet of frontage along the beach and water.

(R. at C9.) The Tax Map does not show the lot continuing past this line. (R. at C9).

However, a 1994 retracement survey prepared from a 1968 plan and 1987 survey data

shows the lot having one hundred feet of frontage along the beach, narrowing to

approximately twenty-one feet of riparian frontage at the mean high water level. (R. at

B14.) A deeded right-of-way crosses the property. (R. at D43.) A second right-of-way crosses a neighboring lot. (R. at B7.)

The City of Biddeford completed a city-wide property revaluation for tax-year 2007, with a cut-off date of April 1, 2007. (R. at C1.) For the April 1, 2007 assessment date, the City Assessor calculated each lot's assessed value by applying the following formula:

> Acreage (s.f.) x Unit Price [i.e. appraised value] x Site Index multiplier
> x Condition Factor multiplier x Neighborhood multiplier = Land Value
> [i.e. assessed value].

(R. at D26.) The Assessor worked with the City's revaluation company to appraise oceanfront property by using nine oceanfront property sales that occurred in Biddeford between April 2004 and January 2007. (R. at D26–27.) This list included the Fowskis' purchase of 35 Fortunes Rocks Road, and "showed a mean average land sale price of $1,158,713.11 for oceanfront sale[s]." (R. at D26.)

All oceanfront property was assigned the same Site Index multiplier 7.15, and "all ocean influence property … was assigned a Neighborhood Code multiplier of 2.5." (R. at D27.) These multipliers were developed through sales analyses of similarly grouped properties. (R. at D27.) The Assessor used the Condition Factor to reflect site-specific adjustments to a property's land value "such as lot size, shared access drives, recorded rights of way across a property, erosion or wetlands…. For a property without any site specific adjustments, a Condition Factor of 1 was assigned to the property." (R. at D27.)

Under the April 1, 2007 assessment date, the Fowskis' property's appraised value was $1,094,200, of which $932,000 was apportioned to land and $162,200 was apportioned to buildings. (R. at D2.) Its assessed value was $995,700, of which $848,100 was apportioned to the land and $147,600 was apportioned to the building. (R. at D26.)

2

This assessment reflected a 5% downward adjustment to reflect the right-of-way across the Fowskis' lot, i.e. the Fowskis' condition factor was 0.95. (R. at D27.) The 2007 values were carried over into the 2008 and 2009 tax years. (R. at D26, F2.)

On February 19, 2009, the Fowskis applied for a property tax abatement for the 2008 tax year. (R. at B4.) Their application listed "fair market value, equality with other property, [and] shape and traffic considerations." (R. at B4.) Where the application asks what the Fowskis believe the fair market value of the property to be, they wrote "about $900,000??". (R. at B4.) The Assessor denied the application on March 13, 2009, and the Fowskis appealed to the Board of Assessment Review. (R. at B1, B17.)

The Fowskis argued to the Board that their property had not been assessed according to its fair market value or in an equitable manner. (R. at B1.) They requested that their property's appraised land value be reduced, and/or their Condition Factor be adjusted downward. (R. at B6–7.) Mr. Fowski began his argument supporting a lowered land valuation by attempting to show that properties in other neighborhoods were being systematically appraised at lower levels than property in the Fortunes Rocks neighborhood. (R. at D8, E5–6.) He did this by analyzing the nine oceanfront properties the Assessor used to determine the mean average oceanfront sales price for the 2007 revaluation. (R. at D8.)

Mr. Fowski's analysis began with the recorded sale price for each property, all of which were sold between 2004 and 2007. (R. at D8.) For each property, he subtracted the 2006 appraised value of the buildings from the recorded sale price. (R. at D8; see C13, D36, D38.) Mr. Fowski labeled the resulting difference as the "Residual Land Value." (R. at D8.) He then compared this "Residual Land Value" to the Assessors 2008-2009 appraised land value to find the ratio between the two. (R. at D8.) Comparing the resulting ratios, Mr. Fowski claims that in 2008-2009 oceanfront land in the Fortunes

3

Rocks neighborhood was appraised at an average 95% of its "Residual Land Value," while land in other neighborhoods was appraised at 77%.[1] (R. at D8). According to Mr. Fowski, this translated into a "23% tax penalty for [Fortunes Rocks] beachfront owners. (R. at D8.) Only two of the nine properties in the list were actually located in Fortunes Rocks. (R. at D8.)

Mr. Fowski performed a separate, similar analysis of four properties sold in the latter half of 2007. (R. at D12.) Two of the properties were oceanfront lots located in the Fortunes Rocks neighborhood, and two were non-oceanfront lots from other coastal neighborhoods. (R. at D12.) Mr. Fowski subtracted the Assessor's current appraised building value from the 2007 sale price. (R. at D12; see B23.) He labeled the difference as the "Real Lot Value." (R. at D12.) He then compared this "Real Lot Value" to the Assessor's current appraised land value to establish in his view the percentage by which the Assessor was over- or under-valuing the land. (R. at D12.) Mr. Fowski also compared the properties' sale prices to their current total appraised values to determine how much they were over- or under-valued. (R. at D12.)

Using this analysis, Mr. Fowski argued that Fortunes Rocks' properties' land were appraised at an average of 119% of the "Real Lot Value," and that the properties were appraised at an average of 116% their sale prices overall. (R. at D12.) In contrast, Mr. Fowski claimed that the non-oceanfront land in other neighborhoods was appraised at 68% of its "Real Lot Value," and the properties overall were appraised at 75% their sale prices. (R. at D12.) Mr. Fowski asserted that this translated "into a 75% tax penalty for [Fortunes Rocks] beachfront owners of land of equal value." (R. at D12.) He

---

[1] The record shows that the 2008-2009 appraised building values were not identical to the 2006 values used by Mr. Fowski. (R. at D8; see C13, D36, D38.) In at least one case the building values had doubled. (R. at D39.)

apparently repeated this exercise with all single-family home sales that occurred in Biddeford between April 1, 2007 and March 31, 2008. (R. at D10–11.)

From his calculations, Mr. Fowski essentially made two arguments. First he claimed that he was owed a 16% reduction in his land's appraised value. (R. at D13.) He arrived at this number by reasoning that since the 2007 sales data shows land in Fortunes Rocks was appraised at approximately 116% of its "Real Lot Value," the over-appraisal could be remedied by being reduced 16%, i.e. the "Real Lot Value" was on average 84% of the appraised land value. (*See* R. at D12.) His second argument was that his ratios revealed that the property-tax assessment system in Biddeford "*necessarily results in unequal apportionment.*" (R. at D9, D12.) Mr. Fowski did not produce any current independent appraisal of his property or other evidence of its fair market value. He also did not address any factor that goes into the assessed-value calculation other than the appraised land values.

In addition to requesting a reduction in the appraised value of his land, Mr. Fowski argued that the Condition Factor of his property should be adjusted downward. (R. at D21–23.) The Fowskis currently receive a 5% reduction in the assessed value of their property to reflect the right-of-way in their deed. (R. at E23.) Mr. Fowski contended that he should receive an additional 5% reduction for the rights-of-way adjacent to his property and the "nuisance traffic" they bring in the summer. (R. at E23–24.) He also requested a further 5% reduction for the shape of his lot. (R. at E17.)

Mr. Fowski pointed to another oceanfront lot in Biddeford that had received a 5% reduction for "shape." (R. at B19, E17.) This other lot, identified as lot 62-16, is shown on the Tax Map as having sixty-five feet of road frontage, narrowing to somewhat less than forty feet of frontage along the beach and water. (R. at C12.) The deed to lot 62-16 reflects that it has approximately sixty-five feet of road frontage and

approximately thirty-six feet of ocean frontage. (R. at B26–28, E16.) Though Mr. Fowski's lot has one hundred feet of road frontage and eighty-five feet of beach frontage on the Tax Map, he argued that his deed and retracement survey show his lot continuing past the Tax Map boundary and narrowing to twenty-one feet of ocean frontage. (R. at B 14, C9, E16.) Turning again to ratios, Mr. Fowski contended that while lot 62-16 had a water-to-road ratio of 56%, his lot had a ratio of 21%. (R. at E17.) Mr. Fowski argued that since he has less water frontage than lot 62-16, with an even more severe taper, it would be unreasonably and irrationally discriminatory to deny him a similar shape reduction in his property assessment. (R. at E17–18.)

The City Assessor disagreed with Mr. Fowski's arguments and attempted to rebut each of his points. The Assessor started from the position that Biddeford's City Charter precludes him from considering any property sales that took place after the last city-wide revaluation, until a new revaluation is performed.[2] (R. at C2, E27.) Turning to Mr. Fowski's calculations, the Assessor found that the city-wide analysis was fatally flawed because Mr. Fowski did not adjust for differences in location, style, site index, and other factors relevant to appraisal and assessment. (R. at C2.) This failure to recognize multiple variables carried over into Mr. Fowski's other two analyses, and highlighted another methodological mistake: Mr. Fowski's charts all attempt to compare appraised value to sale price, when the relevant legal consideration compares assessed value to sale price. (R. at E29-30, E32–33.) The Assessor argued that the sales prices of oceanfront property in Biddeford had held steady or increased despite the

---

[2]     The Charter was amended in 2004 to read: "Property within the City shall be revaluated by a total city-wide assessment, which includes all residential and commercial properties." Biddeford, Me., Charter art. X, § 5. The Assessor interpreted this as a prohibition on "spot assessing." (R. at E27.)

downward trend in other parts of the country, and that the assessed values were all near or under the sale prices. (R. at E32.)

Addressing Mr. Fowski's comparison of two 2007 sales in Fortunes Rocks to two sales elsewhere, the Assessor noted that the two properties outside of Fortunes Rocks were not oceanfront. (R. at E29.) The Assessor also criticized Mr. Fowski for excluding other oceanfront property sales that occurred in Fortunes Rocks in 2007. (R. at E28.) The sale prices in these transactions were $1,188,267, and $1,087,500.[3] (R. at D8, E28). The two properties Mr. Fowski did use were criticized as unusual situations where the buildings had been in poor condition, or the lot configurations were not comparable to Mr. Fowski's land. (R. at E32–33.) Taken together, the Assessor believed that the 2007 sales data supported valuations of over $1,000,000 for Fortunes Rocks oceanfront properties. (R. at E28.)

Addressing the Fowskis' Condition Factor, the Assessor defended maintaining it at 0.95 to reflect only the right-of-way in their deed. (R. at C3, E35.) The Assessor testified that properties subject to rights-of-way receive discounts, but those discounts to not apply to neighbors. (R. at E35, E37.) Foot-traffic on the rights-of-way and the beach were deemed ordinary inconveniences common to oceanfront property everywhere. (R. at E35.) In this case, the Assessor testified that the direct impact of the deeded rights-of-way was lessened by a public right-of-way and public beach less than one-quarter mile from the Fowskis' property, and he noted the general public easement to portions of the shore. (R. at E37.) The Assessor contended that absent a nuisance effect beyond ordinary beach traffic, the Fowskis were not entitled to a reduction for the rights-of-way across their neighbor's property. (R. at E35–36.)

---

[3] These sales were among the nine used to determine the mean average sale price of oceanfront property in Biddeford. (R. at D6, D8.)

7

The Assessor also argued that the Fowskis were not entitled to a reduction for the shape of their lot because the Tax Map showed their lot with one hundred feet of road frontage and eighty-five feet of ocean frontage. (R. at C9, E34.) The Assessor criticized the accuracy of the survey they produced showing otherwise, and in the alternative argued that the taper of the Fowskis' lot did not adversely affect them such as to justify a 5% reduction in their assessment. (R. at E34, E36.) Comparing the Fowskis' lot to lot 62-16, which did receive a reduction for shape, the Assessor noted that lot 62-16's dimensions were much smaller and narrower on the Tax Map, particularly at the road. (C9, C12, E34–36.) Given the size disparity, the Assessor argued that the Fowskis were not impacted in the same way as the owners of lot 62-16, and so did not merit the reduction. (R. at E36–37.)

The Board unanimously denied the Fowskis abatement request after hearing and taking evidence from Mr. Fowski and the City Assessor at its June 25, 2009 meeting. (R. at E1, E44–45.) The minutes show that the Board passed the following two motions:

> To Deny the appeal for an abatement on a claim that there hasn't been a substantial overvaluation[,]

and

> To Deny the appeal because the Fowskis have not shown that their assessment has not been performed in an equitable manner.

(R. at F3.) Before adjourning, the Board decided to meet again "to consider the acceptance of the written decision in the case of the Fowskis' appeal." (R. at E45, F4.)

The Board met again on July 1, 2009, and unanimously adopted a comprehensive written decision with detailed findings of fact. (R. at F5, G1–4.) After summarizing the Fowskis' and City Assessor's arguments, the Board found

> that the Assessor…appropriately used nine oceanfront sales to develop the assessed value of the Fowski property, such that the property has not been shown to be overvalued. The Board did not find the Fowskis'

8

sales ratio analysis that compared "appraised values" to sales prices to be persuasive.

...The Board agreed that the Assessor used the same methodology consistently to assess Fortunes Rocks oceanfront properties ....The Assessor appropriately used a 5% downward adjustment for the right of way on the Fowski property and no further adjustments for shape/frontage at water's edge or rights of way on an abutter's property were warranted ....

Based on the the foregoing, the Board [found] that the Fowskis failed to prove that the assessed valuation of their property is manifestly wrong: the Fowkis failed to provide evidence that their property was substantially overvalued or that the Assessors's methodology necessarily resulted in unjust discrimination of the Fowski property in comparison to similarly situated properties.

(R. at G3–4.) The Board therefore denied the Fowskis' request for abatement. (R. at G4.)

The Fowskis now bring this 80B appeal, seeking to overturn the Board's decision.

## DISCUSSION

"*Article 9, section 8 of the Maine Constitutions* requires that 'all taxes upon real and personal estate . . . shall be apportioned and *assessed* equally, according to the just value thereof.'" *City of Biddeford v. Adams*, 1999 ME 49, ¶ 14, 727 A.2d 346, 349 (emphasis added). "'Just value' is the equivalent of 'market value.'" *Muirgen Props., Inc. v. Town of Boothbay*, 663 A.2d 55, 58 (Me. 1995) (quoting *Shawmut Inn v. Town of Kennebunkport*, 428 A.2d 384, 389 (Me. 1981) (internal quotations omitted). "A town's assessment is presumed valid and the taxpayer must prove it is manifestly wrong." *Adams*, 1999 ME 49, ¶ 13, 727 A.2d at 349. To show that an assessment is manifestly wrong, "a taxpayer must prove that one of three situations exists:

(1) The judgment of the assessors was irrational or so unreasonable in light of the circumstances that the property is substantially overvalued and an injustice results;

9

(2) There was unjust discrimination;

or

(3) The Assessment was fraudulent, dishonest, or illegal.

*Muirgen Props., Inc.*, 663 A.2d at 58.

On appeal from the Board of Assessment Review, this Court reviews the Board's "decision for abuse of discretion, error of law, or findings unsupported by substantial evidence in the record." *Muirgen Props. Inc.*, 663 A.2d at 58. The Court "will vacate the Commissioners' conclusion that the taxpayer failed to meet this burden 'only if the record compels a contrary conclusion to the exclusion of any other inference.'" *Yusum v. Town of Raymond*, 2001 ME 61, ¶ 9, 769 A.2d 865, 870 (quoting *Weekley v. Town of Scarborough*, 676 A.2d 932, 934 (Me. 1996)) (internal quotations omitted).

Mr. Fowski now contends that his analyses constituted compelling evidence showing both that his land was substantially overvalued and that the City's method of assessment necessarily results in unjust discrimination. He also argues that denying his property assessment a 10% reduction for the adjacent rights-of-way and the lot's shape is arbitrary, capricious, and unjustly discriminatory. The City of Biddeford argues that the Board of Assessment Review's decision is legally correct and supported by substantial evidence on the record.

## 1. Substantial Overvaluation

As a preliminary matter, the Court should note that the Board of Assessment Review did not refuse to consider sales that occurred after April 1, 2007, when making their decision. (*See* R. at G1–4.) Thus, the issue of whether the City Assessor can legally refuse to consider new sales data that occurs between city-wide revaluations is not before the Court. However, given the Legislative instruction that assessors "shall

ascertain as nearly as may be the nature, amount and value as of the first day of each April of the real estate and personal property subject to be taxed," it seems unlikely that the City of Biddeford could prevent its Assessor from using current data. 36 M.R.S.A. § 708; *see Moser v. Town of Phippsburg*, 553 A.2d 1249, 1250 (Me. 1989) ("Townwide revaluations are perhaps the best method of maintaining equal apportionment . . . . But assessors are not precluded from undertaking adjustments . . . between townwide revaluations."). The Court does not need to reach the question of preemption or interpretation of Biddeford's City Charter at this time.

An assessor's valuation is presumed valid. *Yusum*, 2001 ME 61, ¶ 8, 769 A.2d at 869–70. To show that the Assessor "substantially overvalued the property, the taxpayer has to present credible evidence of its value." *Northeast Empire P'Ship # 2 v. Town of Ashland*, 2003 ME 28, ¶ 7, 818 A.2d 1021, 1024 (citing *Yusum*, 2001 ME 61, ¶ 13, 769 A.2d at 871–72). Mr. Fowski argues that his analysis shows that the lands of two properties sold in his neighborhood in 2007 were subsequently appraised at 116% of what he believes to be their "Real Lot Value." He believes that this constitutes compelling evidence that his land has likewise been over-appraised at 116% of its fair value, and thus its current appraised value should be reduced by 16%.

One difficulty with Mr. Fowski's analysis is that it assumes a necessary uniformity among properties in his neighborhood. Contrary to Mr. Fowski's argument, his sample of two 2007 sales does not provide compelling evidence of his property's value. His analytical method also dubiously ascribes all devaluation to land rather than buildings by accepting the Assessor's appraised building values and subtracting them from sale price to challenge the Assessor's appraised land value. Most importantly, Mr. Fowski confuses the legal significance of appraised and assessed values.

Maine's Constitution requires that property be *assessed* equally according to the just value thereof." *Me. Const. art IX § 8* (emphasis added); *see Chase v. Town of Machiasport*, 1998 ME 260, ¶ 11, 721 A.2d 636, 640 ("[P]roperty must be assessed at its fair market value."). Thus, to determine that the Fowskis' lot is substantially overvalued, the Board "would have to compare the assessed value of the lot with a value demonstrated by [the Fowskis] to more accurately reflect a fair and just value." *Yusum*, 2001 ME 61, ¶ 13, 769 A.2d at 871.

The record shows that on April 1, 2008, the assessed value of the Fowskis' property was $995,700. (R. at G1.) Mr. Fowski presented the Board with evidence showing that the mean average sale price for oceanfront property in Biddeford between 2006 and 2007 was $1,158,713.11. (R. at D6, G1.) His evidence also reflected that the average sale price of oceanfront property in 2007 only was $1,025,191.75, with prices being higher earlier in that year. (R. at D8, D12.) The City Assessor testified that the properties sold at lower prices had unique factors making them a poor representative sample, and that oceanfront property values had held steady or were increasing. (R. at E32-33, G2-3.) Mr. Fowski did not provide a professional appraisal or any other evidence of the current fair market value of his own property. He also failed to analyze the comparative assessed values of properties in Biddeford, or account for assessment factors other than appraised value.

The record supports the Board of Assessment Review's determination that that the Fowskis failed to produce credible and persuasive evidence to meet their burden. Mr. Fowski's sales ratio analysis does not compel this Court to find otherwise.

2.     **Unjust Discrimination**

Mr. Fowski contends that the same evidence he presented to prove substantial overvaluation also shows that he has been unjustly discriminated against. "[T]axpayers

can prove discrimination only if they show that the assessor's system necessarily results in unequal apportionment." *Ram's Head Partners, LLC v. Town of Cape Elizabeth*, 2003 ME 131, ¶ 10, 834 A.2d 916, 919 (quoting *City of Biddeford v. Adams*, 1999 ME 49, ¶ 14, 727 A.2d 346, 349) (quotations omitted). "The constitutional requirement is the seasonable attainment of a rough equality in tax treatment of similarly situated property owners." *Id.* (quoting *Allegheny Pittsburgh Coal Co.v. County Comm'n*, 488 U.S. 336, 345 (1989)) (quotations omitted). While "[t]he undervaluation of one set of similarly situated properties can support a finding of unjust discrimination . . . 'sporadic differences in valuations,' or 'mere errors of judgment on the part of the assessors' do no necessarily establish unjust discrimination." *Id.* ¶ 11, 834 A.2d at 919 (quoting *Kittery Elec. Light Co. v. Assessors of the Town of Kittery*, 219 A.2d 728, 740 (Me. 1966)) (internal citations omitted).

In the past, the Law Court has found unjust discrimination where an "assessor had arbitrarily granted a discount to one neighborhood based on his 'gut feeling,'" and cited instances where an assessor "ignored recent sales because he thought the buyers were paying too much." *Id.* ¶ 13, 834 A.2d at 920 (citing *Adams*, 1999 ME 49, ¶ 3, 727 A.2d at 348; *State ex rel. Levine v. Bd. of Review*, 528 N.W.2d 424, 428 (Wis. 1995)). While the Law Court ultimately remanded the dispute in *Ram's Head Partners, LLC v. Town of Cape Elizabeth* for further findings of fact, it noted that the taxpayer theoretically could "prove discrimination by showing that the neighboring . . . lots [were] assessed at drastically lower valuations; that there [were] no distinctions between the properties that justify the disparity; and that any rationale offered by the Town for the lower valuation [was] unfounded or arbitrary." *Id.* ¶ 12, 834 A.2d at 920.

The Fowskis claim that the City of Biddeford's assessment method necessarily results in unjust discrimination because Mr. Fowski's calculations indicate that the

Assessor regularly appraises land in Fortunes Rocks at a higher value than land in other oceanfront neighborhoods. The Fowski's did not compare the *assessed* values of properties in different oceanfront neighborhoods, not did they attempt to explain or adjust for other possible factors such as lot sizes or increases in the appraised values of buildings since the properties' sales dates. (*Compare* R. at D8 *with* R. at D38.) The Board was not convinced that correlation equaled causation in this case, and found that the assessment formula was applied fairly and consistently to all properties in the Fortunes Rocks neighborhood and oceanfront properties in Biddeford generally. (R. at G4.) The Board's conclusion is supported by the City Assessor's testimony and the property cards submitted by the Fowskis. The Board rationally concluded that the Fowskis failed to show that the City's methodology necessarily results in unequal apportionment between similarly situated properties.

### 3. The Discount Factor

In addition to disputing the appraised value of their land, the Fowskis argue that their property is overvalued because the City has failed to provide them with certain discounts for allegedly adverse conditions inherent in their lot. They argue that this deprivation of discounts is arbitrary, capricious, and unjustly discriminatory. While they already receive a 5% discount for a right-of-way contained in their deed, they seek additional 5% discounts for their lot's shape and for rights-of-way contained in their neighbor's deeds.

The City Assessor testified that while one other lot in Biddeford did receive a discount due to its shape, the discounted lot was substantially different than the Fowskis' lot. Using the Tax Maps as the standard for comparison, the Assessor showed that the discounted lot has sixty-five feet of road frontage and thirty-six feet of beach frontage, while the Fowskis' lot has one hundred feet of road frontage and eighty-five

14

feet of beach frontage. (R. at B26–28, E16.) The Assessor also testified that it was customary for people to use rights-of-way to access and use parts of the beach under private ownership, and such traffic along neighboring land did not alone constitute a nuisance justifying an additional 5% assessment reduction. (R. at F3.)

The Board agreed with the Assessor and found that the Fowskis were not entitled to further reductions in the Condition Factor of their property assessment. (R. at G4.) While reasonable minds might be able to draw inconsistent conclusions from the record, this alone does not invalidate the Board's findings. *Town of Vienna v. Kokernak*, 612 A.2d 870, 872 (Me. 1992). The Board's decision is rational and supported by substantial evidence in the record.

## CONCLUSION

The Fowskis' appeal is denied and the Board of Assessment Review's decision is affirmed.

Dated:        March 24, 2010

G. Arthur Brennan
Justice, Superior Court

PLAINTIFFS PRO SE
Walter J. Fowski
Nancy C. Fowski
104 Vista Drive
Easton CT  06612

DEFENDANT"S ATTORNEY
SALLY J. DAGGETT, ESQ.
JENSEN BAIRD ET AL
PO BOX 4510
PORTLAND ME  04112